| 38 | 293 |
| 146 | 496 |
| 38 | 293 |
| 47a | 572 |
| 38 | 293 |
| 58a | 91 |
| 38 | 293 |
| 213 | 4534 |
| e213 | 4535 |

## GEORGE WRIGHT

*v.*

## CARLOS LATTIN *et al.*

1. LANDLORD AND TENANT—*eviction—payment of rent.* An eviction of a tenant by the landlord, or a stranger, before the end of the term, exonerates the tenant from the further payment of rent.

2. SAME—*what acts of landlord will discharge the tenant from the terms of the lease.* Any act of the landlord which renders the lease unavailing to the tenant, discharges such tenant from the terms and conditions of the lease, and he may abandon it.

3. SAME—*covenant by landlord to make repairs.* Where a landlord covenants to repair before the term commences, but the tenant enters upon the term and receives possession before such covenant is performed, he can not abandon the lease, and refuse to pay rent for the breach of any other covenant except for quiet enjoyment.

4. Where a landlord fails to perform such covenant, the tenant may recoup the amount from the rent, or may sue upon the covenant.

5. SAME—*grantee of landlord—eviction under him.* If the grantee of a lessor, let to another during the unexpired term, who evicts the first tenant, such grantee becomes responsible for the act.

WRIT OF ERROR to the Circuit Court of De Kalb County; the Hon. THEODORE D. MURPHY, Judge, presiding.

The opinion states the case.

Messrs. LELAND and BLANCHARD, and Mr. R. S. DEVINE, for plaintiff in error.

Mr. CHARLES KELLUM, for defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action *quare clausum fregit,* and the declaration contained three counts, which were substantially the same, alleging that defendants had broke and entered plaintiff's close, and removed fences, buildings, &c. Defendants plead the general issue and a special plea, in bar of the action. The special plea averred, that on the 17th of August, 1858, one Clark Wright and "the De Kalb County Agricultural Society," by their President, entered into a contract for the use and occupancy of the close in question. That by said contract Wright leased the premises to the Society for the term of ten years and two months from that date, for the purpose of holding their annual fairs and exhibitions thereon, at such times as they might designate. The Society to have absolute control of the grounds during their exhibitions and fairs. Wright was to make a substantial wagon track upon the grounds, for the exhibition of horses thereon, and to seed the grounds in grass, and to keep it seeded. The company agreed to build a good and substantial board fence, not less than six feet high, inclosing the grounds, and at the expiration of the term, they were to have the right to remove the fence. And Wright was to have the use of the grounds except when wanted by the Society for exhibitions and fairs. Wright and family were to be admitted free. In case the fence was injured by high water, the Society were to furnish material and Wright to do the work for the repair of the fence.

The plea further averred, that the Society entered into the possession of the premises, as far as they were entitled under the contract. That they erected fences according to the condi-

tions of the agreement, also buildings necessary for the enjoyment of the premises, and kept their part of the agreement. That on the 8th day of March, 1861, one Joseph Wright, claiming to own the premises, entered into an agreement to adopt the original agreement with Clark Wright, with the change that the Society were to maintain the fence, and have the privilege of removing the buildings erected thereon, at the expiration of the lease. And that the Society continued to possess the premises under the last named contract. That these contracts were duly recorded on the 12th day of March, 1861. That whatever right plaintiff ever had, he acquired from Joseph Wright after the contracts were recorded.

That Joseph Wright, after making the contract, by his servants, agents and tenants, tore down and carried away large portions of the fences, and converted the same to their own use. That they broke open and spoiled certain of the buildings, and carried away large portions of the boards, lumber and materials of which they were constructed. Also, used the premises for herding large numbers of cattle and hogs, which trod up and rooted over the premises so as to render them unfit for the use of the Society. That in consequence thereof the defendants, as the servants and agents of the Society, at the times mentioned in the declaration, removed and carried away the fences and buildings, doing as little damage as possible, as they lawfully might. That every article of property so carried away, was erected upon the premises by the Society, under the agreement. To this plea plaintiff filed a demurrer, which was overruled, and plaintiff abiding by his demurrer, the court rendered a judgment against him for costs. To reverse that judgment this writ of error is prosecuted.

It has been held by this court, and seems to be the well recognized doctrine of other courts, that an eviction of the tenant by the landlord, or a stranger, before the end of the term, will exonerate the tenant from the further payment of rent. It is also held, that if the landlord does any act which

renders the lease unavailing to the tenant, he is thereby discharged from the terms and conditions of the lease, and may abandon it. *Halligan* v. *Wade,* 21 Ill. 470 ; *Leadbeater* v. *Roth,* 25 Ill. 587 ; *Anderson* v. *Chicago Fire and Marine Insurance Company,* 21 Ill. 601. In the first of these cases it appeared that the landlord leased other portions of the building for a drinking saloon, and a tin shop, thereby rendering the portion held by the tenant unfit for a hotel, for which purpose it had been leased, and it was held that inasmuch as the landlord had rendered the premises useless to the tenant, it amounted to an eviction, and the tenant might abandon the property. It is true that the tenant has his action for a breach of the covenants of the landlord, but he may also abandon the premises, as the landlord by his act has thereby terminated the lease.

There seems to be no analogy between an eviction, or an act of the landlord which amounts to an eviction, and the breach of a covenant of the landlord to repair the premises. If he covenant to repair before the term commences, it may be the tenant might refuse to enter upon the term until the repairs were made, but having entered upon the term and received possession, he can not abandon the lease and refuse to pay rent for the breach of any other covenant except for quiet enjoyment. If the landlord fail to repair according to his covenant, the tenant may recoup the amount from the rent, or may sue upon the covenant. But in that case his possession remains undisturbed, the breach of covenant only hindering the more commodious enjoyment of the term, whilst in case of an eviction the term is gone, or the property so situated that it ceases to be useful for the purpose for which the term was obtained. And this rule applies with equal force, to the acts of the grantee of the lessor, as he, by the conveyance, becomes the landlord. And so if he lease to another during the unexpired term, who evicts the first tenant. By leasing a second time to a different person who produces the eviction, the landlord becomes responsible for the act.

In this case we think the plea avers facts which amount to an eviction, and they are admitted by the demurrer. It is alleged that the landlord leased the premises subject to this lease to plaintiff. That he ·tore down the fences and carried them away, damaged and spoiled a portion of the buildings erected for the purpose of holding fairs and exhibitions. Also, that he turned in large numbers of cattle and hogs, which so befouled, trod up and rooted over the grounds as to render them unfit for use. This, it would seem, was sufficient to wholly prevent the Society from using the premises for the purposes of fairs and exhibitions, for which it was alone procured by the Society. And if so, it was virtually an eviction which authorized the company to abandon the premises, and to treat the lease as expired, and remove their improvements, as the lease provided they might at the end of the term.

This plea in effect, amounts to a plea of license to enter upon the premises, and to remove the buildings which the Society had placed thereon, and had a right to remove at the termination of the term, and therefore constitutes a bar to the action for breaking and entering the close. It justified the acts done by the defendants below.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*