JULIUS GOLDMAN, Respondent, *v.* HERMAN ROSENBERG et al., Appellants.

The parties entered into copartnership under an agreement, by the terms of which defendants were to contribute as their share of the capital certain premises, upon which were buildings for manufacturing the goods to be sold, at an agreed valuation of $15,000, at which sum they agreed, upon liquidation of the business, to take the property back. They conveyed the property by deed to themselves and plaintiff as copartners. The factory buildings were destroyed by fire; they were insured at the time on behalf of the firm, and it collected $2,942.65 upon the policies. In an action for an accounting upon dissolution of the copartnership, *held*, that defendants were not required to take the premises back at the agreed valuation, less the amount of insurance collected; that the agreement was, in effect, simply to purchase the property back at a stipulated price, and had reference to the existence of the property in substantially the same condition, reasonable wear and tear excepted, it was at the time;

and that performance of the agreement by the vendor having been rendered impossible by the fire, defendants were not bound.

*Tompkins* v. *Dudley* (25 N. Y. 272); *Paine* v. *Meller* (6 Vesey, 349) distinguished.

(Argued June 10, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order made June 9, 1886, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*Julius J. Frank* for appellants. The intention of the parties is to be ascertained, not only from the words of the contract itself, but also from the circumstances surrounding and attending its execution. (*Reed* v. *Ins. Co.*, 95 U. S. 23; *United States* v. *Peck*, 102 id. 64; *Kennedy* v. *Porter*, 109 N. Y. 526, 544; *D., L. & W. R. R. Co.* v. *Bowns*, 58 id. 573; *Dwelley* v. *Dwelley*, 143 Mass. 509.) Where, from the nature of the covenant, it is apparent that the parties contracted on the basis of the continued existence of a given person or thing, a condition is implied that if performance becomes impossible from the perishing of the person or thing that shall excuse the performance. (Chitty on Contracts [11th Am. ed.] 1076; Story on Bailments, § 426; 2 Addison on Contracts, 398; 2 Benj. on Sales [Corbin, 4th Am. ed.], §§ 861–864; *Taylor* v. *Caldwell*, L. J., 33 Q. B. 164; *Williams* v. *Lloyd*, W. Jones, 179; *Keyes* v. *Harwood*, 2 C. B. 905; *Appleby* v. *Myers*, L. R., 2 C. P. 651; *Howell* v. *Copeland*, L. R., Q. B. Div. 258; *Boast* v. *Frith*, L. R., 4 C. P. 1; *Robinson* v. *Davison*, L. R., 6 Exch. 269; *Duke of St. Albans* v. *Shore*, 1 H. Bl. 280; *Wells* v. *Colman*, 107 Mass. 514, 517; *Cleary* v. *Sohier*, 120 id. 210; *Weis* v. *Devlin*, 67 Tex. 507; *Adams* v. *Nichols*, 19 Pick. 275; *Lord* v. *Wheeler*, 1 Gray, 282; *Walker* v. *Tucker*, 70 Ill. 527; *Smith* v. *McCluskey*, 45 Barb. 610; *Niblo* v. *Binsse*, 1 Keyes, 476,

479; *Clinton* v. *Ins. Co.*, 45 N. Y. 454, 466; *Bacon* v. *Simpson*, 3 M. & W. 78; *Dexter* v. *Norton*, 47 N. Y. 62; *Kein* v. *Tupper*, 52 id. 550, 556; *Spalding* v. *Rosa*, 71 id. 40, 44; *Smyth* v. *Sturges*, 108 id. 495; *In re Clark*, 72 Penn. St. 142.) Under such circumstances destruction before delivery of the buildings has always been held to discharge the vendee from the contract. (*Wells* v. *Colman*, 107 Mass. 514, 517; *Clinton* v. *Ins. Co.*, 45 N. Y. 454; *Wood* v. *Hubbell*, 10 id. 479, 487; *Reede* v. *Sayre*, 70 id. 180, 187; *Wickes* v. *Bowman*, 5 Daly, 225.) This is especially true where vendee has not been in possession or where his possession has been co-extensive with that of the vendor. (*Cheney* v. *Woodruff*, 45 N. Y. 98; *Aspinwall* v. *Balch*, 7 Daly, 200; *Life Ins. Co.* v. *Balch*, 4 Abb. N. C. 204; Gerard's Titles to Real Estate [2d ed.] 472; 2 Addison on Contracts, 398.) The altered condition of the property not having been contemplated by the parties when the contract was made, a court of equity will now enforce performance. (*Peters* v. *Delaplaine*, 49 N. Y. 362; *Columbia College* v. *Thatcher*, 87 id. 311; *Bostwick* v. *Beach*, 105 id. 661; *Fitzpatrick* v. *Dorland*, 27 Hun, 291.) The court will not decree specific performance of an act impossible of performance in its entirety, nor of an act which will work inequality and injustice. (*Russell* v. *Allerton*, 108 N. Y. 208.) The conduct of the parties immediately after the fire should be taken into consideration. (*City of Chicago* v. *Sheldon*, 9 Wall. 50; *District of Columbia* v. *Gallaher*, 124 U. S. 505; *Syms* v. *Mayor, etc.*, 105 N. Y. 157; *Jencks* v. *Robertson*, 58 id. 621; *Dubois* v. *D. & H. C. Co.*, 4 Wend. 290; *Graves* v. *White*, 87 N. Y. 463; *Harris* v. *Hiscock*, 91 id. 340; *Woolner* v. *Hill*, 93 id. 576; *Allen* v. *Jaquish*, 21 Wend. 630, 632; *Keyes* v. *Harwood*, 2 C. B. 905; 2 Addison on Contracts, 798; *England* v. *Curling*, 8 Beav. 129; *Jackson* v. *Sedgwick*, 1 Swanst. 460; *Coventry* v. *Barclay*, 3 De G., J. & S. 320.) Plaintiff waived performance of the covenant requiring defendants to take back the factory property, and is estopped from insisting thereon. (*In re Clark*, 72 Penn. St. 142; *Menendez* v. *Holt*, 128 U. S. 514; *Mead*

v. *Parker*, 111 N. Y. 259; *Woolner* v. *Hill*, 93 id. 576; *Viele* v. *Judson*, 82 id. 32; *Stover* v. *Flack*, 30 id. 64; *Duffy* v. *O'Donovan*, 46 id. 223; *Pike* v. *Nash*, 1 Keyes, 335; 2 Parsons on Contracts, 793, 799; *Cornish* v. *Abington*, 4 H. & N. 549; *Niven* v. *Belknap*, 2 Johns. 589; Addison on Contracts, 326; *United States* v. *Peck*, 102 U. S. 64; *Fleming* v. *Gilbert*, 3 Johns. 527; *R. R. Co.* v. *Bartlett*, 120 Ill. 603; *Smith* v. *C. R. & M. R. R. Co.*, 43 Iowa, 239; *Benedict* v. *Lynch*, 1 Johns. Ch. 379.) There was no mutuality of remedy between the parties. (*Meason* v. *Kaine*, 63 Penn. St. 335, 340; *Bodine* v. *Glading*, 21 id. 50; *Benedict* v. *Lynch*, 1 Johns. Ch. 370; *Bates* v. *Cort*, 2 B. & C. 474; *Weldon* v. *Beckel*, 10 Daly, 472; *Taft* v. *Schwamb*, 80 Ill. 300; *Lacy* v. *Hall*, 1 Wright [Pa.] 360.)

*E. H. Benn* and *J. Alexander Koones* for respondents. The argument that the burning, or partial, or even total destruction of the buildings on the lots, absolves the defendants from their agreement to take back the property has nothing to support it. (*Clinton* v. *H. Ins. Co.*, 45 N. Y. 465; *Kingsbury* v. *Westfall*, 61 id. 356, 359; 1 Dart on Vendors [5th Eng. ed.] 248, 249; 1 Sugden on Vendors [8th Am. ed.] 468; *Paine* v. *Meullor*, 6 Ves. 349; *Cass* v. *Rudell*, 2 id. 280; *Robb* v. *Mann*, 11 Penn. St. 300; Pomeroy on Specific Performance, § 322; *McKechnie* v. *Sterling*, 48 Barb. 330, 335; *Brewer* v. *Herbert*, 30 Md. 301.)

HAIGHT, J. This action was brought for an accounting between copartners. On the 19th of November, 1887, the parties hereto entered into a written contract to form a copartnership to manufacture and sell varnishes and japans. The copartnership was to continue until the 31st of December, 1880. The plaintiff was to put in $75,000 in cash, and the defendants their factory buildings and the grounds upon which the same were situated, which were to be contributed as a part of their capital stock, at a valuation agreed upon of

$15,000, at which sum they agreed, on the liquidation of the business, to take the property back. The defendants executed a deed conveying said property to the plaintiff as copartners. Thereafter, and on the 6th day of February, 1879, the buildings upon the factory property were destroyed by fire. At the time the buildings were insured on behalf of the firm, who collected of the insurance companies, as damages, the sum of $2,942.65. On the termination of the copartnership the plaintiff claimed that it was the duty of the defendants to take the real estate back at the sum of $15,000, less the amount of insurance collected as the damages on account of the fire. The defendants claiming that the buildings upon the premises having been destroyed by the fire they were released from the provisions of the contract, and were not obliged to take the premises back. The value of the premises, at the time of the dissolution, appears to have been about $6,000.

In determining this question it becomes important to have in mind the relation of the parties under the contract, in order that we may properly distinguish between the different line of authorities relied upon by the opposing parties. When the articles of copartnership were entered into, the defendants executed and delivered a deed of the premises to the individuals composing the firm. The title, therefore, vested in the firm. Under the articles of copartnership the defendants agreed to take the premises back at the stipulated sum of $15,000. The firm having the title would have to reconvey the property to the defendants. The agreement was, therefore, in effect, an agreement to purchase the property at the termination of the copartnership, and to pay therefor the stipulated price.

Benjamin on Sales, at section 570, states the rule as follows: " It is no excuse for the non-performance of a condition that it is impossible for the obligor to fulfill it if the performance be in its nature possible. But if a thing physically impossible, *quod natura fiera non concedit*, or be rendered impossible by the act of God, the obligation is at an end."

Story, in his work on Contracts, at page 1076, says: "But in contracts from the nature of which it is apparent that the parties contracted on the basis of the continued existence of a given person or thing, a condition is implied that if the performance become impossible from the perishing of the person or thing, that shall excuse such performance."

In the case of *Wells* v. *Calnan* (107 Mass. 514) the plaintiff had agreed to sell the defendant a farm at a price agreed upon, to be paid for at a future day specified, and on the payment of the purchase-price the plaintiff was to execute and deliver the defendant a deed of the premises. Subsequently the buildings upon the farm were destroyed by fire. Thereafter, and at the time agreed upon, the plaintiff tendered a deed and demanded the contract-price, which was refused, and subsequently action was brought to recover the amount. It was held that he could not recover. GRAY, J., in delivering the opinion of the court, says: "When property, real or personal, is destroyed by fire, the loss falls upon the party who is the owner at the time, and if the owner of the house and land agrees to sell and convey it upon the payment of a certain price which the purchaser agrees to pay, and before full payment the house is destroyed by accidental fire, so that the vendor cannot perform the agreement on his part, he cannot recover or retain any part of the purchase-money."

In the case of *Dexter* v. *Norton* (47 N. Y. 62), the action was brought to recover damages for a breach of contract to sell and deliver a quantity of cotton. The defendant had agreed to sell to the plaintiff six hundred and seven bales of cotton at a price agreed upon. A portion had been delivered, but one hundred and sixty-one bales were accidentally destroyed by fire without fault or negligence on the part of the defendants. Subsequently cotton rose in value and the plaintiff claimed the right to recover the increase in value on the bales destroyed. It was held that the cotton did not vest in the vendee at the time it was destroyed by fire; that thereafter delivery was impossible, and that the plaintiff was not entitled to recover.

In the case of *Kein* v. *Tupper* (52 N. Y. 350), the plaintiff had contracted to sell the defendant one hundred and nineteen bales of cotton. The cotton was to be weighed and samples taken and compared with the original before delivery, and the plaintiff delivered to the defendants an order upon the warehouse where the cotton was stored, for the same, and the defendants indorsed upon the order a direction to re-store for them and delivered it to the warehouseman. Upon the next day seventy bales of the cotton were weighed and samples taken; that night forty-two of the bales, together with those not weighed, were destroyed by fire. It was held that there was no delivery and acceptance so as to pass the title; that the compliance which was to precede delivery was not complete until the samples taken out had been compared with the original samples; that a destruction of the cotton without fault of the plaintiff relieved him from an action for damages for non-performance.

In the case of *Smyth* v. *Sturges* (108 N. Y. 495), the plaintiff's assignor entered into a contract with the defendant in which he agreed to sell certain lots upon which there were stores. At the time of the agreement there were various fixtures, consisting of partitions, gas pipes, plumbing, etc., in the stores, which had been put in by tenants, who afterwards, and before the deed was tendered, removed them from the stores. In an action to recover damages it was held that the defendant was entitled to the stores in the condition that they were in when the agreement was made, and that a refusal to take them after the fixtures had been removed was not a breach of the contract.

In the case of *Clark's Appeal* (72 Pa. St. 142) the parties had entered into a partnership agreement, by which one had contributed real estate at an estimated value which was carried into the firm's stock account to his credit, he still retaining the legal title and reserving the right to withdraw the property upon the dissolution of the firm. Subsequently the buildings were destroyed by fire, but were rebuilt with new and more expensive buildings by the firm. It was held that he could

not thereafter withdraw the property; that the fire had rendered it impossible to perform the conditions of the contract; that the loss fell upon the partnership, and it having reconstructed the buildings, that they were new and different from those existing at the time the contract was made, and that he did not have the right to withdraw them. (See, also, *Rugg* v. *Minett*, 11 East, 210; *Clinton* v. *The Hope Ins. Co.*, 45 N. Y. 454, 466; *Thompson* v. *Gould*, 20 Pick. 134; *Herring* v. *Hoppock*, 15 N. Y. 409.)

It will be observed that, under the authorities to which we have referred, the question as to who shall sustain the loss depends largely upon the determination of the question of ownership, and this rule is expressly recognized by Pomeroy in his work on Specific Performance, at section 322, cited by the respondent, in which he states that " The effect of events occurring after the point of time which fixes the interest of the parties is wholly different from that of prior events. At that period, although the contract is executory in form and is treated as wholly executory at law, the equitable beneficial estate in the subject-matter passes to the purchaser, and he becomes, in contemplation of equity, the real owner. He, therefore, takes the benefit of all subsequent improvements, increases, gains, rises in value and other advantages happening to the property. On the other hand, the subject-matter is at his risk and he must bear all losses, total or partial, from fire or other accidental causes or from trespassers and all depreciations in value and other disadvantages, *res perit domoni.* But the latter proposition is subject to the most important modification, namely: " That the loss or depreciation does not happen from the neglect, default or unwarrantable delay of the vendor in carrying out the contract."

Applying the principle stated in these authorities to the question under consideration we find that the copartnership was the owner of the premises, having the legal title thereto at the time the fire occurred, and had the premises insured. That the defendants were not the owners, legal or equitable. They did not have an insurable interest in the premises. It

is true that they had agreed to purchase the premises at a time fixed upon in the future at a stipulated price, but that agreement had reference to the existence of the property in substantially the same condition, reasonable use and wear excepted, that it was in at the time the agreement was made, and at that time the factory buildings were in existence. Since then they have been destroyed by fire and the value of the property has largely depreciated in consequence thereof. The defendants did not agree to purchase the premises without the buildings, and it is no longer possible for the plaintiff or the members of the copartnership to convey and give title to that portion of the premises destroyed by the fire.

We are, therefore, of the opinion that performance of the contract in that regard can no longer be enforced.

The respondent states that the burning of the buildings did not harm the defendants, as the insurance companies offered to rebuild the buildings. No such fact, however, appears to have been found by the referee. It does appear that he was requested to so find by the plaintiff, but that the request was refused. We have examined the authorities referred to by the respondent, and those relied upon by the referee, but it does not appear to us that they are in point or bear upon the question under consideration.

A tenant does not occupy the position of a purchaser under a contract of sale, or come within the same rule. Neither does a contractor who has undertaken to furnish the material and construct a house on the land of another, where the same has been destroyed by fire before the house was finished and delivered, as was the case of *Tompkins* v. *Dudley* (25 N. Y. 272). There can be no doubt about that rule. If you go to a wagon-maker and order a carriage made, he cannot recover the contract-price until he delivers the carriage. The fact that it was burned or destroyed when partially built is his loss, not yours. It does not, however, appear to us that this or kindred cases cited are in point or bear upon the question under consideration.

The case of *Paine* v. *Meller* (6 Ves. 349, 352), was disposed

of upon the ground that the party had become, in equity, the owner of the premises at the time of the fire, and is, consequently, in harmony with the cases to which we have already referred.

Some question has been made in reference to the form of the exceptions taken by the appellants. The criticism is well founded as to most of them, but an exception to the third conclusion of law, in that the item, factory account, $12,961.88, should have been stated therein at $6,000, we think is good and sufficient in form. It is the item in controversy, and which is involved in the question which we have discussed.

·We are, therefore, of the opinion that the judgment should be reversed, and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.