CHARLES A. EDWARDS, Respondent, *v.* ALEXANDER McLEAN, Appellant.

Where, after the execution of a lease of a dwelling-house for a term to commence in the future, and shortly before the commencement of the term, a person residing therein was taken sick with an infectious disease, and consequently it would not have been safe or prudent to take young children into the house at the beginning of the term, *held*, that this did not, in the absence of an express covenant that the premises would remain free from infectious disease, authorize the lessee to surrender the lease, or relieve him from liability to pay the rent reserved.

Also *held*, that the provisions of the statute relieving the lessee of a building from liability to pay rent when, without fault on his part, the building is destroyed or so injured "as to render it untenantable or unfit for occupancy" (Chap. 345, Laws of 1860) had no application, as there was no such destruction or injury as is contemplated by the act.

The lease was executed in duplicate; the one retained by plaintiff contained this clause: "The said dwelling to be furnished substantially as it is now, but more particularly described in a certain inventory which is to accompany and form a part of this lease." In the one delivered to defendant the word "substantially" was omitted. At the time of the

execution and delivery of the lease the premises were occupied by one F., who had in his possession the inventory referred to. When he removed he took with him a piano, mantel ornaments and a few articles of furniture which belonged to him. Defendant was informed before he received the lease that F. owned the ornaments and some articles of furniture. In an action to recover the rent reserved the court submitted to the jury the question as to whether there was a material diminution of the furniture in the house when the lease was executed. *Held,* that it was evidently the intent of the parties to lease only the furniture belonging to the house; and in view of the facts and of defendant's knowledge that F. owned some of the furniture, and also that the means were at hand from which he could readily have determined the precise articles, there was no breach of contract, and defendant had no cause of complaint because of the submission of the question to the jury. *Smith* v. *Marrable* (11 M. & W. 5); *Hart* v. *Windsor* (12 id. 68); *Wilson* v. *Hatton* (L. R. [2 Ex. Div.] 336), distinguished.

Reported below, 23 J. & S. 126.

(Argued June 19, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made November 21, 1887, which affirmed a judgment in favor of plaintiff entered upon a verdict, and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Calvin Frost* for appellant. The defendant is bound only by the lease delivered to him. (2 Pars. on Cont. 18, 19.) The contract was entire. (2 Pars. on Cont. 163; *Roberts* v. *Beatty,* 2 Penn. 63; *Champlin* v. *Rowley,* 13 Wend. 258; *Mead* v. *DeGolyer,* 16 id. 632; *Paige* v. *Ott,* 5 Den. 632.) The court should have permitted evidence of the nature of the infection in the house. (*Wood* v. *Hubbell,* 10 N. Y. 487; *Cleaves* v. *Willoughby,* 7 Hill, 83; *Meeks* v. *Ring,* 51 Hun, 329; *McGashan* v. *Tallmadge,* 37 Barb. 315.) While it may be conceded that, as a general rule, a covenant in a lease will not be implied; that the demised premises are fit for occupation, or for the purposes for which they were hired, an exception exists in the case of a furnished house, hired for temporary

use — such as a summer residence. (*Smith* v. *Marrable*, 1 Car. & M. 479 ; 11 M & W. 5 ; *Hart* v. *Windsor*, 12 id. 63 ; *Sutton* v. *Temple*, Id. 42 ; *Wilson* v. *Hatton*, L. R. [2 Ex. Div.] 336 ; *Chadwick* v. *Woodworth*, 13 Abb. [N. C.] 351, 353 ; Woodf. on Landl. & Ten. 173 ; Vaughn, 118 ; *U. S.* v. *Bostwick*, 94 U. S. 53, 65, 66 ; *Powell* v. *Chester*, 52 L. T. 722.)

*Walter Edwards* for respondent. The lease of the demised premises contained no covenant on the part of the plaintiff except that defendant might peaceably and quietly have and enjoy the demised premises. It is the settled law in this state that in the absence of any covenant as to the fitness of the premises for occupation as a dwelling, no covenant of the lessor can be implied on that subject. (*Franklin* v. *Brown*, 22 J. & S. 474 ; *Jaffe* v. *Hearteau*, 56 N. Y. 398 ; *Cleves* v. *Willoughby*, 7 Hill, 83 ; *O'Brien* v. *Capwell*, 59 Barb, 497 ; *Edwards* v. *Harlem R. R. Co.*, 98 N. Y. 245.) Defendant's contention that the court should have allowed evidence of infection by scarlet fever is not well founded. (*Cesar* v. *Karutz*, 60 N. Y. 229.)

HAIGHT, J. This action was brought to recover the rent alleged to be due and owing upon a lease of a dwelling-house at Morristown, New Jersey.

It appears that on the 28th day of March, 1885, the plaintiff leased to the defendant a furnished house for the period of four months from the 1st day of June, 1885, for the sum of $800. The lease was in writing, executed in duplicate, one of which was retained by the plaintiff and the other delivered to the defendant. They were alike in all respects with one exception. The one which was retained by the plaintiff contained the following clause : " The said dwelling to be furnished substantially as it is now, but more particularly described in a certain inventory which is to accompany and form a part of this lease." Whilst in the one which was delivered to the defendant the word " substantially " was omitted. At the time the lease was executed and delivered, the premises were occu-

pied by a tenant by the name of Fuller, whose term was to expire on the fifteenth day of May thereafter. In the meantime one of his children was stricken with scarlet fever, and he remained in possession of the premises until the twenty-second of May, at which time he removed therefrom. The defendant, on learning that Fuller's child was sick with scarlet fever, returned his lease to the plaintiff, with a notice that a disease of an infectious nature existed upon the premises and that consequently he surrendered the lease. The plaintiff immediately returned the lease to the defendant with a notice that he refused to accept the surrender. The defendant refused to enter into the possession of the premises, or to pay rent as it became due according to the terms of the lease. The tenant Fuller, when he moved from the premises, took with him a piano, some willow chairs, mantel ornaments, one or two lamps, a child's crib, a pair of portieres which had been hung up in the place of others at the time he took the house. The property so taken by Fuller belonged to him and was not a part of the furniture which belonged with the house. Upon the trial, the defendant claimed that the removal of this property by Fuller from the premises operated as a breach of the lease on the part of the plaintiff, and that the court should have dismissed the complaint. It appears, however, that before concluding the contract for the lease of the house, he visited the premises in company with one Johnson, an agent for the plaintiff, and that he knew of the fact that Fuller was then occupying the premises. He concedes that he was informed by one of the servants that Fuller owned "the ornaments and some little things," and Johnson, who was sworn as a witness on behalf of the defendant, testified that he thinks he said to the defendant at the time that some of the furniture belonged to Fuller. The court submitted to the jury the question as to whether there was a material diminution of the furniture that was in the house at the time the lease was executed and delivered, and upon this issue the verdict was in favor of the plaintiff. It is quite evident that the parties intended to lease only the furniture that belonged with the

house. It can hardly be claimed that it was within the contemplation of the parties that that which belonged to the tenant Fuller was to remain after the expiration of his term. It is the duty of the court to construe the provisions of the lease in the light of the surrounding circumstances under which it was executed. There was an inventory which, under the term of the lease, was to accompany it and form a part thereof. At the time the lease was executed, it was said that this inventory was in the possession of the tenant Fuller. The inventory was not received in evidence and does not appear to have been called for by the defendant. In view of these facts, together with the fact that the defendant knew that the tenant Fuller owned some of the furniture and that the means were readily at hand from which he could have determined the precise articles upon inquiry, it appears to us that there was no breach of contract on the part of the plaintiff, and that the defendant has no cause of complaint at the submission of this question to the jury.

Perhaps a more serious question arises over the rejection of the evidence of Dr. Baldwin as to whether it would be proper to take young children into a house on the first of June, in which a case of scarlet fever had existed at the middle of May. In considering this question, we will assume that the evidence if admitted would have been to the effect that the disease was of an infectious nature, and that it would not be safe or prudent to move young children into the same house so soon thereafter. Would this avoid the lease and relieve the defendant from his obligation to pay rent? It will be observed that the lease was executed and delivered on the twenty-eighth day of March, and that from that day the leasehold interest in the premises vested in the defendant for the term specified. True, he was not to take possession until the first of June thereafter, but his interest in the premises was definitely fixed and settled by the contract from the date of its delivery. Had anything occurred from which the lease of the premises had been made more valuable, the gain and profit would have been his, and if in the meantime the rental value had depreciated, he would

have been compelled to have sustained the loss. The breaking out of a disease in the house very likely impaired and depreciated its rental value for the time being, but we must bear in mind that this occurred after the lease had been executed and delivered and after the interest of the defendant in the premises had vested. It is not claimed that the plaintiff was guilty of any fraudulent concealment of facts or is chargeable with any negligence in reference thereto, or that it was a matter subject to or within his control.

This is not a case of executory contract in which the risk was with the owner (*Goldman* v. *Rosenberg*, 116 N. Y. 78), but is one in which the title to the leasehold premises had vested under an executed lease. We quite agree that the maxim *caveat emptor* has no application, for the disease did not exist at the time the lease was made; for the same reason, the cases of *Smith* v. *Marrable* (11 M. & W. 5); *Hart* v. *Windsor* (12 id. 66); *Wilson* v. *Hatton* (L. R. [2 Ex. Div.) 336), have no application.

In the absence of an express covenant a lessor cannot be understood to undertake that the premises embraced in the lease will remain free from infectious diseases during the term. The disease may break out in the tenant's family after he has taken possession, or it may spread upon the premises from neighboring residences. To hold that a tenant under such circumstances would be relieved from paying rent would, in times of an epidemic of a contagious disease in a populous city, nulify a majority of the leases. (*Murray* v. *Albertson*, 50 N. J. L. 167; *Franklin* v. *Brown*, 27 N. Y. S. R. 955; *Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y. 245; *Jaffe* v. *Harteau*, 56 id. 398; *Chadwick* v. *Woodward*, 13 Abb. [N. C.] 441.)

To some extent the statute has now relieved tenants from the severe rigor of the common law. It provides that " the lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed, or be so injured by the elements or any other cause so as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent

to the lessors or owners thereof after such destruction or injury, unless otherwise expressly provided by written agreement or covenant; and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises and of the lands so leased or occupied." (Laws of 1860, chap. 345.) But the provisions of this statute have no application to the case under consideration, for there has been no such destruction or injury to the premises as contemplated by it. (*Suydam* v. *Jackson*, 54 N. Y. 450.)

A claim has been made that the plaintiff improperly allowed the tenant Fuller to remain in the premises until the twenty-second day of May, when his term expired on the fifteenth; but the defendant was not to have possession until the first of June. The right, therefore, to occupy the premises until that time was reserved to the plaintiff. He doubtless might have turned his tenant out on the fifteenth, at the expiration of his term, but at that time the tenant's child was down with the fever, and, under the circumstances, it was but an act of humanity to permit the tenant to remain until removal could be made with safety. It does not appear to us that the defendant was materially prejudiced in consequence of this fact or that his legal liability was changed.

The judgment should be affirmed, with costs.

All concur, except PARKER, J., dissenting.

Judgment affirmed.