(26 Misc. Rep. 428.)

### HUBER v. RYAN.

(Supreme Court, Special Term, Kings County. February, 1899.)

1. LANDLORD AND TENANT—BREACH OF COVENANT—EVICTION.
   Breach of covenant of a landlord to put in a skylight and glass floor in the demised premises is not an eviction.

2. SAME.
   Where the keeping of a covenant to improve or repair is not expressly made a condition to the covenant to pay rent, a breach of the former does not justify refusal to observe the latter.

3. SAME.
   The provision of the real property law that where a leased building is, without fault of the tenant, destroyed, or so injured, by the elements or any other cause, as to be untenantable, the tenant may end the lease, does not apply to a case where the landlord breaches a covenant to put in a skylight in the event of his building on land adjoining the leased premises, and cutting off light and air from it.

Appeal from municipal court of New York.

Action by Emelie Huber against Thomas F. Ryan. There was a judgment for plaintiff, and defendant appeals. Affirmed.

The lease was in writing of an entire business building for a term of five years and contained the following covenant by the lessor:

"That should the owner of the lot in the rear of the demised premises build upon his land now vacant and shut off the light and ventilation to the rear of the demised premises, then the party of the first part hereby agrees to put a skylight ventilator on the roof of the demised premises in addition to a glass floor on the second floor sufficient to light the rear of the store."

The said rear owner built on his land, thereby closing up the rear windows of the demised premises. The plaintiff, who had succeeded to the ownership of the premises, failing to keep the said covenant, the defendant moved out. The month's rent recovered for accrued thereafter.

Robert H. Roy, for appellant.
John F. Clark, for respondent.

GAYNOR, J. The claim that the failure of the landlord to keep the covenant to put in the skylight ventilator and glass floor amounted by common law to an eviction is not tenable. The common-law doctrine of eviction has reference to affirmative acts of the landlord, or of a third person under a title paramount to the landlord's. There must be a forcible ouster of the tenant, or such an unlawful interference with his beneficial use of the demised premises as amounts to a permanent substantial impairment of it. Mere breach of covenant to repair, improve or rebuild is no eviction. The contrary idea to be met with in dicta here and there can only come from momentary absence from the mind of the meaning of the term. It conveys the

idea of a tort, not of a breach of covenant, except, of course, of the covenant of quiet enjoyment. 1 Washb. Real Prop. c. 10, § 6; Lewis v. Payn, 4 Wend. 423; Etheridge v. Osborn, 12 Wend. 529; Ogilvie v. Hull, 5 Hill, 52; Dyett v. Pendleton, 8 Cow. 727; Lounsbery v. Snyder, 31 N. Y. 514; Sully v. Schmitt, 147 N. Y. 248, 41 N. E. 514.

I am not unmindful of the statement in the prevailing opinion in the case of Tallman v. Murphy, 120 N. Y. 352, 24 N. E. 718, that "a failure to perform the duty which the landlord owes to the tenant, and without the due performance of which the leasehold premises are not tenantable, would constitute an eviction." An examination of that case shows that no such general proposition was presented or decided. It was a case of an apartment house, and the injuries to the demised apartment were from affirmative causes outside such apartment but inside the building or appurtenant to it. The tenant had no control over them. They were chargeable to the landlord, and were such a breach of the covenant of quiet enjoyment (which is implied if not expressed—Mayor, etc., v. Mabie, 13 N. Y. 151; Vernam v. Smith, 15 N. Y. 333; Edgerton v. Page, 20 N. Y. 286) as amounted to an eviction.

Passing, then, the question of eviction, did the landlord's breach of his covenant to improve or repair give the tenant the right to quit the demised premises and cease to pay the rent? Not unless the keeping of such covenant was a condition to the covenant to pay rent. Such a condition is not expressed in the lease, and the established rule of construction of leases seems to forbid that it be implied. If the tenant wants it he should have it expressed in the lease. The two covenants being independent of each other, the tenant may not elect to surrender the demised premises and end the lease for failure by the landlord to keep his covenant. Woodf. Landl. & Ten. 173; Surplice v. Farnsworth, 7 Man. & G. 576; Johnstone v. Milling, 16 Q. B. Div. 474; Lewis v. Chisholm, 68 Ga. 40; Wright v. Lattin, 38 Ill. 293. There seems to be a lack of decisions on the subject. The first of the foregoing was made in 1844. I find none earlier, and we seem to have none at all in this state, though there is a dictum in point in Speckels v. Sax, 1 E. D. Smith, 255. As there was in that case no covenant to repair, the question whether the breach of such a covenant gave the tenant the right to quit and end the lease was not up. In Hallett v. Wylie, 3 Johns. 44, where it was held, following the old English cases, that the destruction by fire of the house let was no defense to an action for the subsequent rent, there was no covenant in the lease that the landlord should rebuild. The court refused to imply one, but further said "it will be found on examining some of the cases before cited that even where the lessor was under a covenant to rebuild" and failed to do so the lessee was notwithstanding held liable for the subsequent rent. A careful examination of all of the cases cited by the learned court shows this statement to have been inadvertent. In none of them was there a covenant by the lessor to rebuild. The mistake no doubt came from accepting the headnote to Monk v. Cooper, as reported in 2 Ld. Raym. 1477, which is that the tenant must pay the rent though the house is burnt down "and the landlord is bound to rebuild it." There was

in that case no covenant that the landlord should rebuild. It is better reported in 2 Strange, 763. The many cases holding that for a breach of covenant by the landlord to repair the tenant may hold him for the damage from such breach, including the cost of the repairs if the tenant has made them, are not in point. The question here is whether the tenant may elect to end the lease and move out.

It does not seem to me that the provision of our real property law, that where a leased building is, without the "fault or neglect" of the tenant, "destroyed or so injured by the elements or any other cause as to be untenantable, and unfit for occupancy," the tenant may surrender the premises and end the lease "if no express agreement to the contrary has been made in writing," applies to the present case. It clearly relates only to cases of destruction or injury by an affirmative cause. It has no reference to negative causes, as wear and tear, or gradual deterioration. The general phrase, "or any other cause," does not enlarge its intendment in this respect. That phrase has to be interpreted according to the setting or society of words in which it is. In re Tilden, 98 N. Y. 442. It means any other cause of that kind of destruction or injury. It does not intend natural and gradual injury from wear and tear, if the word "injury," any more than the word "destruction," may be so used at all. If, for instance, a tenant have a lease for 10 years, with a covenant by the landlord to repair, the running down of the premises from failure to repair is not within this statute. The common-law rule was that when the tenant was deprived of the demised premises by the destruction thereof by an invading army, by fire, water, tempest, or any other like cause, the tenant had to continue to pay the rent unless he had saved himself by a clause in the lease. Paradine v. Jane, Aleyn, 26; Monk v. Cooper, 2 Strange, 763; Belfour v. Weston, 1 Term R. 310; Hallett v. Wylie, 3 Johns. 44. Our statute was to every one's knowledge passed to do away with such rule. Suydam v. Jackson, 54 N. Y. 450. It embraces all such affirmative acts of destruction or injury rendering the premises untenantable which occur without the fault or neglect of the tenant, but it goes no further. For instance, I do not understand that the case of a soap factory with an unbearable stench, or of a boiler smithy with an unbearable din, set up next door by a third person, would be within the statute. The phrase "or any other cause" has its limits. Disease infection communicated from the neighborhood and rendering the demised premises untenantable is not within it. That is not of the kind of injuries meant by the statute. Edwards v. McLean, 122 N. Y. 302, 25 N. E. 483.

It seems a confusing mistake to consider the statute as an enlargement of the law of eviction. The law of eviction is as it was before the statute was passed. The statute is a part of the contract of lease, and has to be read into it, unless the contract by its terms excludes it. It bears on the former law of contract between lessor and lessee, not upon the law of eviction. The law of eviction has to do with acts of the landlord, or of a third person under a title paramount to the landlord's. The statute has to do only with things which were not and are not included within the law of eviction.

I do not understand that the decision in the recent case of Meserole

v. Sinn, 34 App. Div. 33, 53 N. Y. Supp. 1072, is against the foregoing view. The facts in that case were that the surface water from the neighborhood, owing to the lay of the land, constantly flowed upon the demised premises and into the cellar. It was not a case of gradual wear and tear or deterioration. The trouble was not from lack of repairs, but from an outside cause. The jury were charged that if the untenantable condition resulted from wear and tear, or lack of repair, the tenant was liable for the rent. This statement makes apparent the theory on which the case was submitted to the jury and what the actual decision of the court on appeal was.

In the case at bar, if the demised premises could be said to be untenantable, it is from the breach of the landlord's covenant to make the improvements or repairs to provide light and ventilation, and the failure of the tenant to make them at the landlord's expense. The scope of the statute is not to give tenants relief against such breaches of covenant, but against cases where the demised premises are so injured as to be made untenantable by the happening of some cause outside of the contract duties between lessor and lessee.

The judgment is affirmed.