CHARLES YOUNG *vs.* NATHAN POVICH.

Hancock.	Opinion February 14, 1922.

*In a lease of a furnished dwelling-house for temporary purposes there may be an implied warranty that the dwelling is reasonably suitable for use and occupation. If the lease is for a long term there is no implied warranty, and the rule of caveat emptor applies.*

In the instant case, was there, as a matter of law, an implied warranty, that the house and furniture should be fit for occupation? The answer depends upon whether eight months under all the circumstances and conditions of the case would constitute an occupancy for a temporary purpose.

The lease shows that these premises were let on the eighth day of June, the beginning of the summer season at Bar Harbor.

The occupancy was to be eight months. The term was only two-thirds of a year. It continued for a limited time and cannot be said to be of long duration. The term was within the rule of implied warranty.

On report. This is an action for money had and received for the recovery of one hundred dollars paid in advance upon the execution of a lease of two furnished flats over the stores in the Povich Block in Bar Harbor. The plaintiff with his family moved into the premises and remained there one day, moving out the next day because of the unfit and unsuitable condition of the premises as a tenement. The question involved is as to whether there was an implied warranty that the tenement was reasonably suitable for use and occupation, or whether the rule of caveat emptor applied. By agreement of the parties the case was reported to the Law Court with a stipulation that if the questions of law and fact were determined in favor of the plaintiff, he should have judgment for one hundred dollars and costs, otherwise judgment for defendant. Judgment for plaintiff for one hundred dollars and costs.

The case is stated in the opinion.

*B. E. Clark,* for plaintiff.

*H. L. Graham,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, DEASY, JJ.

SPEAR, J. This case involves an action for money had and received for the recovery of one hundred dollars ($100) paid in advance upon the following written instrument:

"I, Nathan Povich, of Bar Harbor lease to Charles W. Young, of Bar Harbor, for the sum of Three Hundred and Fifty Dollars ($350) until April 1, 1921, the two furnished flats over the stores in the Povich Block on Main Street, with the agreement that said Charles Young will pay One Hundred Dollars ($100) and the balance in amounts of Thirty-five Dollars ($35) or more, per month until the sum of Two Hundred and Fifty Dollars ($250) is paid, and that, should any of my family come to Bar Harbor, they shall be entitled to a room for the length of time they wish to stay."

The specifications under the declaration are as follows:

"By reason of said promise and agreement the said plaintiff entered into possession and occupancy of said tenement, but found the bed-bugs so amiable and friendly that he was unable to occupy said furnished flat. That they bit him and his family and made said tenement wholly uninhabitable."

The plea is unnoticed, as the case was reported to the Law Court as follows:

"By agreement of parties this case is reported to the Law Court: The Law Court to determine from so much of the foregoing evidence as is legally admissible. (1) Whether said house was fit for occupation as a furnished house; (2) As a matter of law whether there was an implied warranty that said house and furniture therein should be fit for use and occupation.

"If the Law Court finds from the evidence that said house as furnished was not fit for use and occupation, and that there was an implied warranty that said house and the furniture therein should be fit for use and occupation, judgment to be for the Plaintiff for the sum of one hundred dollars ($100) and costs otherwise judgment to be for the Defendant."

The report first presents a question of fact as to whether the house as furnished was fit for use and occupation. Without rehearsing the testimony we think it amply sustains the burden of proof that it was not fit for use and occupation.

This brings us to the question of implied warranty. The law is well settled upon the force and effect of a lease in the following respects:

(1) When a landlord leases an unfurnished dwelling-house to a tenant whatever the length of the period, there is no implied warranty that such dwelling-house is reasonably fit for habitation, unless he has made a valid agreement to that effect. The common law of caveat emptor is still in force in this State. *Bennett* v. *Sullivan*, 100 Maine, 118. We know of no exceptions to that rule.

(2) When a landlord leases a furnished dwelling-house for a period of years there is no implied warranty that the dwelling is fit for use and occupation. The rule of caveat emptor still applies. In *Davis* v. *George*, 67 N. H., 393 it is said: In a lease of a furnished house for a term of years there is no implied warranty that the house is suitable for the lessee's occupation.

(3) In a lease of a furnished dwelling-house for a short time for temporary purposes there may be an implied warranty that the dwelling is reasonably suitable for use and occupation. The source of this doctrine is found in *Smith* v. *Marble*, 11 M. & W. 5 an English case which holds that "in a lease of furnished rooms for a particular season of the year a warranty may be implied that the rooms are properly furnished and suitably fitted for such purposes."

*Ingalls* v. *Hobbs*, 156 Mass., 348, which is perhaps the leading case in that State, follows the doctrine laid down by the English case and so fully states its own rule, and the reason therefore, that we quote at length as follows:

"It is well settled, both in this Commonwealth and in England, that one who lets an unfurnished building to be occupied as a dwelling house does not impliedly agree that it is fit for habitation. In the absence of fraud or a covenant, the purchaser of real estate, or hirer of it, for a term however short, takes it as it is, and determines for himself whether it will serve the purpose for which he wants it. He may, often does, contemplate making extensive repairs upon it to adapt it to his wants. But there are good reasons why a different rule should apply to one who hires a furnished room or a furnished house for a few days or a few weeks or months. Its fitness for immediate use of a particular kind, as indicated by its appointments, is a far more important element entering into the contract than when there is a mere lease of real estate. One who

lets for a short term a house provided with all furnishings and appointments for immediate residence may be supposed to contract with reference to a well understood purpose of the hirer to use it as a habitation. An important part of what the hirer pays for is the opportunity to enjoy it without delay, and without the expense of preparing it for use. It is very difficult, and often impossible, for one to determine on inspection whether the house and its appointments are fit for the use for which they are immediately wanted, and the doctrine of caveat emptor, which is ordinarily applicable to the lessee of real estate, would often work injustice if applied to cases of this kind. It would be unreasonable to hold, under such circumstances, that the landlord does not impliedly agree that what he is letting is a house suitable for occupation in its condition at the time."

By dicta the above doctrine is approved in *Dutton* v. *Gerrish*, 9 Cush., 89, by Chief Justice Shaw; *Edwards* v. *McLean*, 122 N. Y., 302, 25 N. E., 483; See also *Cleves* v. *Willoughby*, 7 Hill, (N. Y.) 83, and *Franklin* v. *Brown*, 118 N. Y., 110, 23 N. E., 126.

We are impressed to the point of conviction that both the legal principle announced and the reason given for declaring it in the above case are equitable, just and in accord with the modern methods of the letting and occupancy of real estate. The letting of a house wholly or partly furnished for occupancy for short periods of time has become perhaps the predominant practice in seashore and summer resorts. To hold that a lessee for a "short term" should be obliged to remain in a tenement infested with bed-bugs or pay for the term if he quits would be little less than an outrage and should not be sanctioned by law, and cannot be sustained by reason.

The phrase "short term" as used in the *Ingalls* case comes within the rule of implied warranty. Conversely, the phrase "long term" would come within the rule of caveat emptor. Where then, between the two is the line to be drawn that would distinguish a "short term" from a "long term"?

It is apparent from the statement of these legal principles that no arbitrary time can be fixed. To say that three months or four months or six months should be the fixed time, for a "short term" would be the dogmatic judgment of the particular court before whom the question might arise. One court might say that four

months and another that six months was the line between a short and a long term. Such dogmatic rule would leave the law without precedent or certainty. We are of the opinion therefore, that this issue must be treated as a question of fact depending upon the circumstances of each particular case. We think that the phrase "for a temporary purpose" instead of the phrase "for a short term," under present methods of demise and occupancy, would more definitely present the question of fact to be determined in this class of cases. The elasticity of that phrase would allow a variation of the time, depending upon the purpose for which the lease was taken, and upon all the other circumstances and conditions surrounding the transaction, and thereby be subjected to the test of fact as well as to the test of law.

In other words the issue would present a mixed question of law and fact which would be submitted to the ruling of the court as a matter of law and to the decision of the jury as a matter of fact.

We have used the word "temporary" for another reason. It has a well defined meaning. Webster's New International Dictionary—"temporary, lasting for a time only; existing or continuing for a limited time; not permanent." Words and phrases—"lasting for a time only; existing or continuing for a limited time; not of long duration; not permanent; transitory; changing; but a short time."

We are unable to conceive of any other rational rule of determining the line of demarcation between the domain of implied warranty and caveat emptor than to treat it as a question of fact.

This case comes up on report and the court is required to exercise jury powers. The stipulation in the report submits two questions. First, whether the house was fit for occupation as a furnished house. We have already answered that question basing our conclusion upon the testimony of a disinterested witness, the health officer of Bar Harbor, who said in answer to the question:

Q. "What do you find?"

A. "I find plenty of evidence of being bed-bugs there; dead bugs in the cracks, under the loose wall paper, in places of every description, and practically every room."

Q. "On the second and third floor?"

A. "On the second and third floor."

It appears to have been the ancestral tomb, as well as the present abiding place, of bed-bugs.

The next question in the stipulation involves, as we have already noted, the question of law and fact, namely:

"As a matter of law was there an implied warranty that the house and furniture should be fit for occupation?"

The answer depends upon whether we find eight months under all the circumstances and conditions of the cases to be for a temporary purpose. The lease shows that these premises were let on the eighth day of June, the beginning of the summer season at Bar Harbor. The occupancy was to be for eight months. The term was only two thirds of a year. It continued for a limited time and cannot be said to be of long duration. The term was within the rule of implied warranty.

> *Judgment for the plaintiff for one hundred dollars ($100) and costs.*