On May 14, 1941, the plaintiff as owner of a shore cottage located at No. 62 Park Street, New London, Connecticut, through her husband acting as her agent, entered into a written agreement with the defendants (Defendant's Exhibit 1) for the rental of the cottage for the summer season of 1941, starting May 25th through Labor Day. The agreed rental was $525, payable $25 on deposit, $250 upon acceptance of the keys, and $250 on August 1, 1941. The plaintiff agreed to clean the cottage, which had been closed since the previous summer season.
The defendants took possession of the cottage in the latter part of May, together with the families of two sisters of Mrs. Frauenglass, and occupied the premises until July 31st, when they quit possession of the cottage and refused to make the last and final payment stipulated in the lease.
The plaintiff brings this action to recover the balance of $250 which was payable on August 1st. The defendants plead by way of special defenses that they are under no obligation to pay the rent claimed to be due because a skunk or musk odor, which was unknown and not discoverable by the defendants at the time the lease was signed, so permeated the cottage as to render the premises uninhabitable and as to force them to quit possession of the cottage. In their first special *Page 357 
defense, the defendants allege that the plaintiff falsely represented at the time the rental agreement was made that the premises were fit for the purpose of a residence. In their second special defense, the defendants allege that the plaintiff covenanted at the time of the rental agreement that the premises were fit for the purpose of a residence.
In the absence of agreement there is no implied warranty that premises are suitable for the purposes for which they are hired, nor is there any implied agreement that the landlord will keep in repair any part of the premises which are leased and placed in the exclusive possession and control of the tenantGallagher vs. Button, 73 Conn. 172, 175. The court finds that the plaintiff made no representation, at the time the lease was entered into, that the cottage was a fit place for the purpose of a residence, nor did she expressly covenant to the same effect. And even if it could be found that the plaintiff represented or covenanted that the premises were a fit place for residence, such a representation or covenant would not extend to conditions which were not in existence at the time the lease was entered into but which arose during the term of the lease. The plaintiff did agree to clean up the house, since it had been closed for several months, and this promise was performed to the satisfaction of the defendants at the time they entered into possession.
Under the terms of the agreement entered into between the plaintiff and defendants, under the common law, the defendants would not have the right to quit possession, unless some act of the plaintiff which would constitute a constructive eviction rendered the premises uninhabitable. 2 Underhill, Landlordand Tenant (1909) §§ 670, 673. The presence of vermin upon the premises, or of disagreeable and noxious smells does notper se constitute an eviction unless their presence is attributable to some act of the landlord during the term. 2 Underhill,Landlord and Tenant, supra, § 682; Sigal vs. Wise, 114 Conn. 297,304; Amsterdam Realty Co. vs. Johnson, 115 id. 243, 248. It cannot be found to be a fact that the alleged insufferable odor of which the defendants complain was caused by any act of the plaintiff.
The statement signed by the plaintiff's agent of July 30th that he was "responsible for cause of [the] cottage not being inhabitable because of any odor" was not an admission that any act of the plaintiff had caused the odor. Rather, in the *Page 358 
light of the circumstances under which it was made, it was intended as a denial of any liability. It was made in support of the plaintiff's claim that no odor at all permeated the premises and to relieve and indemnify the defendants, if they suffered any liability as a result of the alleged odor, to any subtenant which they might secure. It directly challenged the defendants' claim that there was any odor which prevented them from securing a subtenant.
The right, if they have any right, of the defendants to quit the premises because of the alleged odor and to relieve themselves of the obligation to pay the agreed upon rental, rests on the provisions of section 5023 of the General Statutes, Revision of 1930, which provides as follows: "The tenant of any tenement which may be, without his fault or neglect, so injured as to be unfit for occupancy, shall not be liable to pay rent after such injury so long as such tenement is untenantable, if he continue to occupy, unless it be otherwise expressly provided by written agreement; and, in case of such injury, he may quit possession of such tenement, but, if the same shall become fit for occupancy during the continuance of his lease, he shall then pay the rent, and may again occupy it."
"The purpose of the statute is to mitigate the harshness of the common-law rule under which, though a tenant had been deprived of the use of the leased premises because, without fault of his own, they had become unfit for occupancy, he was still bound by his covenant to pay. The statute was designed to relieve the tenant of the burden of paying rent after it had become impossible for him to use and occupy the premises leased." Hayes vs. Capitol Buick Co., 119 Conn. 372,376.
To avail themselves of the protection of the statute, the defendants must show: (1) that there was an injury to the tenement; (2) that the injury occurred without their fault and neglect; and (3) that the injury rendered the tenement unfit for occupancy.
In Hatch vs. Stamper, 42 Conn. 28, 30, it was held that the word "injury" as used in a statute upon which the present statute as a revision is based, referred to "cases where the building becomes untenantable by reason of some sudden and unexpected calamity, as where it is wholly or partially destroyed by fire, water, or by a mob, or other like cause." *Page 359 
Under a somewhat similar statute in New York (Real Property Law [Consol. Laws, chap. 50] § 227), it has been held that the statute is not applicable where the premises have become untenantable by reason of becoming infected with disease germs, but that the injury must be one to the building itself.Edwards vs. McLean, 122 N.Y. 302, 25 N.E. 483.
But even assuming that the noxious odor was an injury to the tenement within the meaning of that word as it is used in the statute, it did not occur without the fault and neglect of the defendants.
The statute has not altered or affected the common-law rule that in the absence of an agreement to the contrary, the tenant is under an obligation to make ordinary repairs. Hatch vsStamper, supra; Lesser vs. Kline, 101 Conn. 740; Hayes vs.Capitol Buick Co., supra.
The defendants here made absolutely no attempt to eliminate the odor and suffered it to continue until it became, so they allege, unbearable. Yet at a slight cost, by following the instructions of the health officer of the City of New London, they could have eliminated it. It cannot be found that the injury, if there was an injury, which rendered the tenement unfit for occupancy, did not arise without the fault or neglect
of the defendants.
Finally, the court cannot find that the premises were in fact rendered untenantable. Reid vs. Wills, 118 Conn. 119, 123. Although the defendants and their relatives who lived with them claim that they were constantly sickened by the odor and became nauseated repeatedly, and that their children were made ill almost daily from the same cause, they admit that they never called a physician. They never complained to their next door neighbors and several weeks went by before they complained to the plaintiff. The plaintiff in person, her husband, and her granddaughter visited the premises and could discern no odor. From all the evidence submitted, the defendants have not sustained their burden of proof that the cottage was unfit for occupancy and was in fact untenantable.
With respect to the third special defense of the defendants that the plaintiff accepted a surrender of the premises, the defendants' own testimony is that the plaintiff's agent repeatedly told them that he would continue to hold them responsible *Page 360 
for the balance due. The plaintiff did not relet the premises during the remaining term of the lease.
 The issues are found for the plaintiff and judgment may be entered for the plaintiff to recover the sum of $250 of the defendants.