NATHAN SIGAL *vs.* ISIDORE WISE.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

Argued October 15th, 1931—decided February 16th, 1932.

*Josiah H. Peck* and *I. Oscar Levine,* with whom, on the brief, was *Louis H. Katz,* for the appellant (plaintiff).

*Harry L. Nair,* with whom was *Sheldon J. Kahn,* and, on the brief, *Solomon Elsner,* for the appellee (defendant).

MALTBIE, C. J. The following facts are alleged in the complaint as amended: On November 29th, 1927, the defendant made a written lease to the plaintiff of a store on Main Street in Hartford, with the basement under it except for a certain designated portion, for the period from March 1st, 1928, to February 28th, 1933. The lease also included a space in the rear of the store, at a specified additional yearly payment, and as to this space it was provided that if the lessor desired it for building or other purposes the lessee would, within six months from the receipt by

him of a written notice of such desire, remove any structure standing upon it at his own expense and relinquish all his rights and interests in it. The plaintiff took possession of the store, occupied it until November 7th, 1930, and was tenant of it on that day. He also walled in the space in the rear and occupied it for use in connection with the store. On November 7th, 1930, the store was completely destroyed by fire without any fault of the plaintiff, but the space in the rear was not seriously injured. On December 18th, 1930, the defendant notified the plaintiff that he regarded the latter's rights under the lease as terminated and should treat them accordingly. Subsequently the defendant tore down the walls and tore up the floor of the space in the rear. In December, 1930, an announcement appeared in the newspapers of the city that the defendant proposed to erect a building on the land formerly occupied by that of which the store leased to the plaintiff formed a part and that the first floor of the new building, at street level, would be suitable for a store and would be leased to a certain corporation for that purpose. The plaintiff believed that this announcement was made with the authority and approval of the defendant. At all times since March 1st, 1928, the plaintiff has fully complied with all the terms of the lease. The complaint sought a declaratory judgment and also injunctive relief. The defendant demurred to the complaint and claims for relief upon several grounds and the trial court sustained the demurrer.

The first prayer was for a declaratory judgment that if the defendant erects a building of such a character that the space leased to the plaintiff is suitable for store purposes the plaintiff shall be entitled to occupy that space for the purposes of a retail store in accordance with the terms of the lease. The demurrer

attacked this prayer upon the ground that the relief claimed is hypothetical and contingent upon the happening of an uncertain event and does not concern any presently existing rights. The statute authorizing the Superior Court to render declaratory judgments is as broad as it well could be made. General Statutes, § 5334. The rules adopted to carry out the statute authorize the Superior Court to render such judgments "as to the existence or nonexistence (a) of any right, power, privilege or immunity; or (b) of any fact upon which the existence or nonexistence of such right, power, privilege or immunity does or may depend, whether such right, power, privilege or immunity now exists or will arise in the future." Practice Book, p. 255, § 62. While the rules go on to limit that power in certain respects, neither in them nor in the statute is there any restriction upon the power of the court to render judgments determining rights which are contingent upon the happening of some future event. Indeed, a contrary intent is clearly indicated by the provision in the rules authorizing the determination of any fact upon which the existence or nonexistence of any right, power, privilege or immunity does or may depend, whether such right, power, privilege or immunity now exists or will arise in the future. The remedy by means of declaratory judgments is highly remedial and the statute and rules should be accorded a liberal construction to carry out the purposes underlying such judgments. One great purpose is to enable parties to have their differences authoritatively settled in advance of any claimed invasion of rights, that they may guide their actions accordingly and often may be able to keep them within lawful bounds, and so avoid the expense, bitterness of feeling and disturbance of the orderly pursuits of life which are so often the incidents of law suits. Fully to carry out

the purposes intended to be served by such judgments, it is sometimes necessary to determine rights which will arise or become complete only in the contingency of some future happening. Even if the right claimed in this case is a contingent one, its present determination may well serve a very real practical need of the parties for guidance in their future conduct. A construction of our statute and rules which would exclude from the field of their operation the determination of rights, powers, privileges and immunities which are contingent upon the happening or not happening of some future event would hamper their useful operation. Such a construction does not, however, compel the Superior Court to decide claims of right which are purely hypothetical or are not of consequence as guides to the present conduct of the parties. The second of the limitations upon the exercise of the power contained in the rules is designed to cover just such situations. It provides that there must be an actual, bona fide and substantial question or issue in dispute, or a substantial uncertainty of legal relations which requires settlement. The allegations of the complaint present such an uncertainty of legal relations as upon the hearing the court might deem to require present settlement.

A further prayer for relief by way of a declaratory judgment sought an adjudication that the store leased to the plaintiff had been rendered unfit for occupancy within the meaning of § 5023 of the General Statutes. The statute referred to is quoted in the footnote and

---

"Sec. 5023. The tenant of any tenement which may be, without his fault or neglect, so injured as to be unfit for occupancy, shall not be liable to pay rent after such injury so long as such tenement is untenantable, if he continues to occupy, unless it be otherwise expressly provided by written agreement; and, in case of such injury, he may quit possession of such tenement, but, if the same shall become fit for occupancy during the continuance of his lease, he shall then pay the rent, and may again occupy it."

is the basis of most of the claims made by the plaintiff. The defendant demurred to this claim for relief upon the ground that it did not ask for the determination as to any right, power, privilege or immunity arising under the allegations of the complaint, but did require a determination as to the existence of a conclusion upon which no such present right, power, privilege or immunity can be based and which could not finally settle any dispute or uncertainty between the parties. If the plaintiff is correct in the construction of the statute he claims, it is a necessary condition precedent to its operation in the case before us that there be a finding that the leased premises were rendered unfit for occupancy as those words are used in it. The question so raised is as to the existence of a factual situation which is within the provision of the rules giving the court power to determine as to the existence of any fact upon which a right does or may depend. If the terms of the statute clearly defined the rights of the parties, the determination of this question would be clearly proper. In view of the varying claims they make as to the meaning of the statute it is true that its determination would not alone settle their rights, either present or future. The court may properly refuse to hear a case which seeks a declaration as to the existence of a fact where, even though it be found to exist, the rights of the parties will be still left in uncertainty. If the complaint sought nothing more by way of a declaratory judgment this prayer for relief might have been demurrable. In this instance, however, it but particularizes one factor necessarily involved in the first prayer for relief and might properly have been left in the complaint. In so far as the demurrer attacks the prayers for relief by way of a declaratory judgment it should have been overruled.

The demurrer also attacks the sufficiency of the allegations of the complaint to entitle the plaintiff to the relief which he sought and in particular claims that on the destruction of the building the lease was terminated and the statute we have quoted would not apply to give the plaintiff the right he asserts. A proper interpretation of the statute requires a consideration, first, of the common law as to the rights of lessees of buildings or portions of buildings which have been destroyed or rendered untenantable and then of the development of the statute since its original enactment. Where a leased building was destroyed the common law recognized a sharp distinction between the rights and obligations of lessees of a whole building and of lessees of portions of it. As to the former, a destruction of the building, as by fire, did not put an end to the lease, nor the payment of rent; but as to the latter it did produce these effects. *Curtiss* v. *Hoyt,* 19 Conn. 154, 168; 2 Underhill, Landlord & Tenant, §§ 788, 789. As regards neither class of tenants, however, did an injury to the tenement short of its destruction, even though rendering it untenantable, terminate the lease or relieve the tenant from his covenant to pay rent. 1 Tiffany, Landlord & Tenant, § 182n; 36 Corpus Juris, 322. In 1869 the legislature passed an Act which is quoted in the footnote.

"That the lessee, lessees, or occupants of any building which shall have been or shall be, without any fault or neglect on their part, destroyed or so injured by the elements, or any other cause, as to be untenantable or unfit for occupancy, shall not be liable or bound to pay rent to the lessor, lessors, or owners thereof after such destruction or injury, unless otherwise expressly provided by written agreement between such parties; and in case of such destruction or injury, such lessee, lessees, or occupants may thereupon quit possession of such building, land, and premises so leased or occupied, and surrender the same to the lessor or owners thereof, and require the cancellation of the lease (if in writing), under which the same was held or occupied."

Public Acts of 1869, Chap. 92. The effect of this statute, where a building was destroyed or rendered untenantable, was to free the tenant from the obligation to pay rent and to give him an option definitely to terminate the lease. The statute was not restricted in its operation to lessees of an entire building. Indeed, one of its purposes was to change the common law as to the payment of rent where a leased portion of a building had been rendered untenantable. *Hatch* v. *Stamper,* 42 Conn. 28. The statute apparently intended to abolish any distinction between the two classes of tenants and place both on an equality as regards their rights and liabilities. It changed the common law in at least two respects: Where the building was destroyed the lessee of the whole building was freed of any obligation to pay rent and might terminate the lease at his option; where the building or a leased portion of it was so injured as to be untenantable both classes of tenants were freed from liability to pay rent and might terminate the lease. At common law the lessor was not obliged to repair or rebuild the injured or destroyed building nor did the statute impose such an obligation upon him.

The statute took its present form in the Revision of 1875. General Statutes, Rev. 1875, p. 354. Unless the contrary clearly appears revisers are presumed to have expressed in the Revision they prepared the intent of existing statutes, though they may have altered the form of their statement. *Gulliver* v. *Fowler,* 64 Conn. 556, 565, 30 Atl. 852; *Hartford & C. W. R. Co.* v. *Montague,* 72 Conn. 687, 690, 45 Atl. 961; *Ross* v. *Crofutt,* 84 Conn. 370, 376, 80 Atl. 90; *State ex rel. Engelke* v. *Kilmartin,* 86 Conn. 56, 61, 84 Atl. 100. We have said of the statute in its changed form that it "covers everything that may be occupied under a lease; everything for which an action for use and occu-

pation would lie at common law." *Miller* v. *Benton,* 55 Conn. 529, 544, 13 Atl. 678. The omission of any reference to a destruction of the building was no doubt due to the thought that the phrase "so injured as to be unfit for occupancy" would include the destruction of the tenement. When we come to the concluding portion of the statute, however, there is a change too clearly apparent to disregard. Under the original statute the tenant had an absolute right to terminate the lease if the leased premises became untenantable. In the revised statute he is not given that right; the obligation to pay rent for the time being is suspended but if thereafter the tenement becomes fit for occupancy, that obligation again arises; and he has a reciprocal right of occupancy. The option is changed from one in the tenant to terminate the lease to one in the lessor to so deal with the premises, if he acts within a reasonable time, as to make the lease again effective. *Miller* v. *Benton, supra,* p. 547. The lessor is under no duty to so deal with them; *Lesser* v. *Kline,* 101 Conn. 740, 746, 127 Atl. 279; but if he does, the tenant must, under the statute, pay the rent and has the right of occupancy.

Where a tenement has been injured but not destroyed, the defendant does not question that this would be the legal effect of repairs made to it by the lessor. But he claims that this would not follow upon its destruction and rebuilding. The effect of such a construction would be to omit a contingency quite likely to happen from the scope of a statute evidently designed to determine completely the rights of tenants in buildings which become untenantable by their destruction or injury. It would be to make a lease terminate upon the destruction of the building when even the option in the lessee to terminate it provided in the original statute has been expressly and inten-

tionally omitted. Moreover, if the words in the first part of the statute "unfit for occupancy" include, as we have held, the destruction of the building, it is difficult to see how the words in the concluding portion "shall become fit for occupancy" can be construed otherwise than as including the rebuilding of the building. The defendant argues that the phrase "if he continue to occupy" in the provision freeing the tenant from obligation to pay rent, implies an intent to make the statute applicable only to situations where the tenement continues in existence; but this would be to exclude from that provision all cases of the destruction of the tenement, which cannot have been intended. Obviously the word "if" is used in the sense of "though." The purpose was to avoid the construction given to similar statutes in other States under which the exemption from the payment of rent came into operation only if the leased premises were vacated. 2 Underhill, Landlord & Tenant, § 791.

Our conclusion, then, is, that where a building is destroyed, the lessees of it or any portion of it are freed from further obligation to pay rent; the lessor is under no obligation to rebuild it, and, if he does, he need not reconstruct it in the same form in which it had existed; but if he does rebuild it in such a way that a tenement in it leased to any tenant is substantially restored, that tenant becomes obligated to resume payment of rent and is entitled again to occupy it. The allegations of the complaint do not conclusively show that the building to be erected as described in the newspaper announcement will not contain a store and basement substantially similar to those leased to the plaintiff. There were, then, sufficient facts alleged to furnish a basis for the declaratory relief sought in the first and third prayers. The complaint also sought an injunction restraining the de-

fendant from leasing for store purposes to any other than the plaintiff the space in the new building corresponding to that described in the lease. Such an injunction could not be granted upon the allegations of the complaint as it does not appear therefrom that a corresponding store space or tenement in a new building erected to replace the one destroyed has or ever will come into existence, and, as we have seen, the lessor is under no legal obligation to provide it.

The complaint also contained a prayer for an injunction against the leasing of the space in the rear of the store to any person other than the plaintiff. This claim raises a distinct question. The plaintiff contends that there was a leasing of this space separate and distinct from the lease of store and basement and, the space not having been affected by the fire, the lease continued in full force as to it. The defendant contends that the plaintiff only had a license to occupy the space in the rear, but this claim cannot be sustained; not merely does the lease use the word "grant," in itself descriptive of a conveyance of an estate in land, but the following covenants are plainly meant in most instances to refer to the space in the rear as well as to the store and basement and in them the word "rent" is used to include the yearly sum specified for this space. Nor was the notice alleged in the complaint, that the defendant regarded the rights of the plaintiff under the lease as terminated, the equivalent of the notice provided for the termination of the plaintiff's interests in the space in the rear, which was to be to the effect that the defendant desired it for building or other purposes. The substantial question presented is, did the provisions of the lease establish a distinct leasing of it so that it is to be regarded apart from the store and basement, or was it intended to be an integral part of the property

leased, separately dealt with only because of the possible desire of the defendant to terminate the plaintiff's interest in it in certain contingencies. Whether the lease is to be given one effect or the other must depend upon the intent of the parties. Reading the lease as a whole, there can be no doubt that the latter was intended. Inasmuch as it does not appear in the complaint that the space was capable of use under the restrictions in the lease apart from the store, when that became untenantable this space would also be within the terms of the statute. Even though a part of a tenement is not affected by conditions which render the rest of the leased premises untenantable, if that part is not capable of a distinct use under the lease, the statute can only be construed as intending that the whole tenement be regarded as untenantable.

It follows that the trial court was correct in sustaining the demurrer to the complaint so far as it sought injunctive relief, but erred in sustaining it upon the other grounds alleged.

There is error and the case is remanded to be proceeded with according to law.

In this opinion the other judges concurred.