SAMUEL D. REID *vs.* SEWARD MILLS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 7th, 1933—decided February 6th, 1934.

*Charles R. Covert,* with whom, on the brief, was *Frank P. Barrett,* for the appellant (defendant).

*John D. Walker,* for the appellee (plaintiff).

AVERY, J. The plaintiff brought this action to recover $450 for rent for the months of October, November and December, 1932, claimed to be due upon a written lease entered into between the parties October 1st, 1931, whereby the plaintiff leased to the defendant, for the term of two years, four acres of land in the town of Darien, with a house, barn and other

buildings thereon. The defendant, in his answer, admitted the lease and that the rent had not been paid for those months, but alleged that the rent was not due upon the grounds: First, because the plaintiff had induced the defendant to enter into the lease by false representations concerning the adequacy of the water supply; and second, that the premises became untenantable because of the exhaustion of the water supply and the plaintiff's failure to provide therefor. At the trial, the court found these issues in favor of the plaintiff and gave judgment for the amount of the unpaid rent. The defendant seeks numerous corrections in the finding of the court bearing upon these two issues. From the evidence certified, it appears that there was conflicting testimony with respect to both of these matters. No correction of the finding is, therefore, permissible by which the defendant's position will be materially advantaged.

The lease contained no condition relating to the water supply nor did it impose any duty on either party in that respect. From the finding as made, it appears that the premises were supplied with water automatically pumped from a well thereon to a tank in the cellar of the house and, from there under pressure, to various outlets; that prior to entering into the lease, the defendant inspected the premises with the plaintiff and inquired whether the water in the well was good water and was told that it was. The well was dug prior to 1900 and although it had run low during prolonged droughts, it was always possible to obtain good water therefrom, and it has never been completely dry. In the fall of 1931, the well went low several times during the day but filled up during the night and could be used the day following. In the summer of 1932, there was a prolonged drought, and

the water in the well was low in the months of June, July and August. The defendant did not complain to the plaintiff of this situation until August 25th, 1932. On that day, the water became too low to reach the bottom of the standpipe in the well and the defendant had the pump shut off, notified the plaintiff that the well was dry, and that he would vacate the premises unless water was supplied. The plaintiff then offered to have water carted on provided the defendant would pay for the carting, which the defendant refused to do. The plaintiff then advised the defendant that the latter could connect with a well upon adjoining property, owned by the former and located within two hundred or three hundred feet of the house on the leased premises, and could pump water from that well. The defendant refused to agree to or act upon either of these offers.

On August 28th, 1932, the plaintiff visited the premises and found between eighteen inches and two feet of water in the well. From August 25th to September 10th, the defendant and his family made no use of the well but had water carried onto the property. On August 28th, the defendant sent by mail a check in payment of the September rent. In July, the defendant's wife had purchased a house in the neighborhood, and the defendant informed the plaintiff thereof and asked permission to sublet the premises, which permission was granted provided a satisfactory tenant could be found. Thereafter, the defendant exhibited the property to prospective tenants. On September 10th, the defendant and his wife removed and went to live with the former's mother until the middle of October, when they moved into the house previously purchased by his wife.

The conclusion of the court that at the time the

lease was entered into no representations were made by the lessor as to the adequacy of the water supply, being supported by substantial evidence, must stand and disposes of the claim that the appellant was induced to enter into the lease by false and fraudulent representations. The further claim of the appellant that the diminution of the water supply was such as to constitute a constructive eviction or rendered the premises untenantable and excused the defendant from paying rent under General Statutes § 5023, is equally without merit. " 'A constructive eviction arises where a landlord, while not actually depriving the tenant of possession of any part of the premises leased, has done or suffered some act by which the premises are rendered untenantable.' " *Amsterdam Realty Co.* v. *Johnson*, 115 Conn. 243, 248, 161 Atl. 339; *Schulte Realty Co.* v. *Pulvino*, 179 N. Y. Sup. 371, 372.

General Statutes, § 5023, provides: "The tenant of any tenement which may be, without his fault or neglect, so injured as to be unfit for occupancy, shall not be liable to pay rent after such injury so long as such tenement is untenantable. . . ." No general rule can be laid down applicable to all circumstances by which it may be determined when a tenement becomes unfit for occupancy and untenantable. The inquiry in every instance depends upon the facts of the particular case. By this is meant the situation of the parties to a lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed. *Hatch* v. *Stamper*, 42 Conn. 28, 30; *Tungsten Co.* v. *Beach*, 92 Conn. 519, 524, 103 Atl. 632; 2 Tiffany, Landlord & Tenant, p. 1262; 2 Underhill, Landlord &

Tenant, p. 1138; 2 McAdam, Landlord & Tenant (4th Ed.) p. 1399.

In this case, the premises were rented with the only water supply a surface well, and the tenant must be taken to have assumed the conditions which might naturally result from a prolonged period of dry weather. Despite temporary inability to use the well before August, the defendant continued his occupancy without protest. It is true that on August 25th the water did not reach the bottom of the standpipe but on August 28th water could be drawn and it does not appear that thereafter the well could not be used. On August 29th, the defendant paid the rent for September and continued to occupy until September 10th. Moreover, the trial court reached the conclusion that the defendant was not constructively evicted but left voluntarily, which, in view of the facts found, we take to mean that the tenant left not because the premises were untenantable even in his judgment but for reasons of his own. The sum and substance of the trial court's finding is to the effect that while there was a shortage of water on the property that summer due to a prolonged drought, there never was a complete failure of the water supply, a conclusion supported by the evidence and the subordinate facts found. It follows that the conclusion of the court that the premises were not rendered untenantable by any act done or suffered by the landlord amounting to a constructive eviction, and that they were not rendered untenantable by reason of any injury to the tenement under General Statutes, § 5023, must stand. This renders it unprofitable to consider the contention urged in the appellant's brief that the total failure of the water supply under the circumstances of this case would constitute a constructive eviction; or, in any event, render the property un-

tenantable within the meaning of General Statutes, § 5023.

There is no error.

In this opinion the other judges concurred.