MATTHEW J. HAYES *vs.* THE CAPITOL BUICK COMPANY ET AL. (856).

SAME *vs.* SAME (857).

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued December 5th, 1934—decided January 21st, 1935.

*Ufa E. Guthrie,* for the appellants (defendants).

*Josiah H. Peck,* with whom, on the brief, was *Donald F. Gaffney,* for the appellee (plaintiff).

BANKS, J.   On October 2d, 1928, the defendant, whose name has since been changed to "The Hartford Buick Company," leased from The Hayes Construction Company a portion of a building in New Britain, suitable for the display, sale and repair of automobiles, for a period of ten years from November 1st, 1928. The Hayes Construction Company subsequently conveyed its interest in the premises to the plaintiff.   The defendant occupied the premises until July, 1932, when it ceased to use them except for the storage of some office furniture and equipment which were removed in October, 1933.   It paid rent up to and including October, 1933, but has paid no rent since then.   The plaintiff brought suit in December, 1933, to recover two months' rent, and by amendment of the complaint sought also to recover rent claimed to have accrued subsequent to the bringing of the action and up to April 1st, 1934. The defense interposed to this action was that the premises had, without the fault or neglect of the defendant, become unfit for occupancy and that the defendant was therefore absolved from liability to pay rent by virtue of the provisions of § 5023 of the General Statutes which is quoted in the footnote.

---

Sec. 5023.   The tenant of any tenement which may be, without his fault or neglect, so injured as to be unfit for occupancy, shall not be liable to pay rent after such injury so long as such tenement is untenantable, if he continue to occupy, unless it be otherwise expressly provided by written agreement; and, in case of such injury, he may quit possession of such tenement, but, if the same shall become fit for occupancy during the continuance of his lease, he shall then pay the rent, and may again occupy it.

The finding, which is not subject to material correction, discloses the following facts in addition to those already stated, relevant to this defense: After the defendant closed the premises in July, 1932, two or three panes of glass in the rear of the building were broken, and as time went on the number of broken panes increased so that there were about seventy in January, 1933, and at the time of the trial, April, 1934, slightly over two hundred. Both parties assumed that the glass was broken by boys throwing stones, which it was not practicable for either plaintiff or the defendant to prevent while the premises remained unoccupied, and there was no practical advantage to be gained by replacing the broken glass so long as this condition obtained. The premises could not be satisfactorily heated unless the broken glass was replaced. On December 6th, 1932, the defendant wrote the plaintiff calling attention to the necessity of protection of water pipes, and other fixtures in the building, which also served an adjacent building owned by the plaintiff, against freezing, "made necessary by our recent closing and the fact that the premises are to remain closed for an indefinite time." On November 17th, 1933, the attorneys for the defendant sent the keys to the building to the plaintiff accompanied by a letter stating that the defendant had elected to terminate the lease on the ground that the premises were untenantable. The action of the defendant in vacating the building and refusing to pay rent after November 1st, 1933, was not the result of the broken glass but because of unfavorable business conditions. The court found that the leased premises were at all times in tenantable condition, and that the plaintiff was under no duty to repair the broken glass until notified by the defendant of the latter's intention to actually occupy the premises.

Even though the premises became unfit for occupancy within the contemplation of the statute, that fact gave the defendant no right of election to terminate the lease. Under the terms of the present statute, while the tenant's obligation to pay rent is suspended, he no longer has an option to terminate the lease, and the lessor may so deal with the premises, if he acts within a reasonable time, as to make the lease again effective. *Sigal* v. *Wise*, 114 Conn. 297, 306, 158 Atl. 891. The claim of the defendant that its liability to pay rent, assumed to have been suspended by the untenantable condition of the building, cannot be revived because the plaintiff has failed to repair within a reasonable time is not tenable. The requirement that the building must be repaired within a reasonable time is in order that the tenant may not suffer by reason of delay in restoring to him the use and occupation of the premises which he has leased. Here the defendant had not only vacated the premises but had notified the plaintiff that they would remain closed for an indefinite period. Putting in the glass would be of no practical advantage to the defendant and delay in putting it in would cause it no damage during the period while it voluntarily left the building unoccupied. If there were any duty upon the plaintiff to make repairs the defendant, having notified the plaintiff that the building would remain unoccupied indefinitely, is not in a position to advance any claims based upon his failure to make them within a reasonable time. *Miller* v. *Benton*, 55 Conn. 529, 548, 13 Atl. 678.

The court correctly held that the defendant's obligation to pay rent was not suspended by an untenantable condition of the building within the meaning of the statute. The purpose of the statute is to mitigate the harshness of the common-law rule under which,

though a tenant had been deprived of the use of the leased premises because, without fault of his own, they had become unfit for occupancy, he was still bound by his covenant to pay. The statute was designed to relieve the tenant of the burden of paying rent after it had become impossible for him to use and occupy the premises leased. *Hatch* v. *Stamper*, 42 Conn. 28, 30. After the defendant vacated the leased premises in July, 1932, because of unsatisfactory business conditions, they remained unoccupied during a year and four months, at the expiration of which period the defendant notified the plaintiff that it elected to terminate its lease upon the ground that the building was untenantable. The untenantable condition is claimed by the defendant to have been caused by the breaking of over two hundred panes of glass in the rear of the building with the result that it could not be satisfactorily heated. This was the condition of the building at the time of the trial in April, 1934. It does not appear from the finding how many panes of glass were broken when the defendant attempted to terminate its lease in November, 1933, or that the building could not then be satisfactorily heated. It does appear that the number of broken panes increased as time went on, as might perhaps be expected in the case of a building left unoccupied by the defendant for so long a period, but upon the finding there is no justification for the defendant's claim that the building was untenantable in November.

Beyond that, under the circumstances here present, there was justification for a finding that the premises had not, without the fault or neglect of the defendant, become unfit for occupancy so as to relieve it of its obligation to pay rent within the terms of the statute relied on. The broken window panes in the rear of the building did not result in depriving the defendant

of the use and occupancy of the building for the purpose of its business. It had already vacated the premises for other reasons, and notified the plaintiff that they would remain closed for an indefinite period. So long as this situation obtained it was a matter of no importance to the defendant whether or not the building was fit for such occupancy and if it was not, that fact did not, under the circumstances, relieve the defendant of its obligation to pay the rent. If the two hundred or more panes of glass had been shattered by an explosion or some other cause, while the defendant was occupying the building, leaving it open to the elements, or if the defendant, after vacating the building, had notified the plaintiff that it intended to return and resume business, then a different question would be presented. The plaintiff was entitled to take the defendant at its word that the building would be closed indefinitely, and so long as it remained vacant was not obliged to perform the futile task of replacing the broken window panes, at least in the absence of any request by the defendant that it do so.

The defendant used the building from July, 1932, to October, 1933, only for the storage of some office furniture and equipment, and it is not claimed that, because of such breaking of the windows as had then occurred, the building had become unfit for such use as the defendant then made or desired to make of it. In such a situation in no true sense have the premises become "untenantable" because no use to which the defendant desires to put them has been interfered with. The inquiry when a tenement becomes unfit for occupancy within the intendment of the statute depends upon the facts of the particular case. "By this is meant the situation of the parties to a lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by

which the tenant's use of the premises is interfered with by the injury claimed." *Reid* v. *Mills,* 118 Conn. 119, 122, 171 Atl. 29. In the analogous case of a constructive eviction, it is held that such an eviction is not established unless the tenant vacates the premises on account of the acts of the landlord relied upon. *Humiston, Keeling & Co.* v. *Wheeler,* 175 Ill. 514, 516, 51 N. E. 893; *Eisenhart* v. *Ordean,* 3 Colo. App. 162, 169, 32 Pac. 495; 2 Underhill, Landlord & Tenant, p. 1175.

The lease provides that the lessee shall furnish a $10,000 surety bond indemnifying the lessor against default by the lessee during the first five years of the term, and a similar bond covering the second five years. The defendant furnished the bond covering the first five years which expired October 31st, 1933. It failed to furnish a bond covering the second period of five years, and, in the second action by the plaintiff seeking specific performance, the court entered judgment decreeing that the defendant furnish such bond with surety. It is found that the plaintiff attached in this action money of the defendant in a bank in the amount of $10,000, and the defendant contends that the plaintiff is not entitled to the decree of specific performance on the ground that this attachment furnishes him adequate and sufficient security. The only relief sought in this action is a decree ordering the defendant to furnish a bond indemnifying the plaintiff against a default in the payment of the rent for the balance of the term. Since there is no claim for money damages, and the allegations of the complaint furnish no basis for a judgment awarding such damages, no judgment could be rendered in the action which could be satisfied out of the money attached, and the attachment therefore furnishes the plaintiff no security for the payment of the rent during the

second five year period covered by the lease. The plaintiff was entitled to a judgment decreeing specific performance of defendant's agreement to furnish a surety bond. Pomeroy's Specific Performance of Contracts (3d Ed.) § 16; 58 C. J. 1958; *Bosch Magneto Co.* v. *Rushmore,* 85 N. J. Eq. 93, 95 Atl. 614.

There is no error in either case.

In this opinion the other judges concurred.