GORDON C. THOMAS *v.* FRANK A. ROPER

HOUSE, C. J., THIM, RYAN, SHAPIRO and LOISELLE, Js.

---

Submitted on briefs December 10, 1971—decided February 2, 1972

*James F. Bingham* and *Paul D. Shapero,* on the brief for the appellant (defendant).

*Brian T. O'Connor* and *John W. Roberts,* on the brief for the appellee (plaintiff).

THIM, J. The plaintiff brought this action to recover rent claimed to be due under a written lease and for damages caused by a breach of the lease agreement. In his answer, the defendant denied cer-

tain allegations of the complaint and interposed three special defenses, namely: (1) That the plaintiff failed to perform certain obligations under the lease; (2) that the plaintiff had induced the defendant to enter the lease by false representations concerning the condition of the premises; and (3) that the premises had become untenantable. The defendant also filed a counterclaim for damages by reason of the plaintiff's alleged failure to perform certain obligations under the lease. The referee found for the plaintiff on the complaint and the counterclaim. From the judgment rendered by the referee exercising the powers of the court, the defendant appealed to this court.

The finding, which is not subject to any material correction, discloses the following: By a written lease dated September 29, 1961, the plaintiff leased a residence in Riverside to the defendant for a term of twenty-one months commencing on October 1, 1961, and ending June 30, 1963, at a monthly rental of $345. The lease required the defendant, inter alia, to keep the premises in neat order and condition, to permit no waste or injury to the property, to perform all required maintenance and repairs to the house, garage, grounds and appliances, to surrender the premises in a good state of repair, and to reimburse the plaintiff for any expense arising from the defendant's violation of the lease covenants. With regard to the septic sewage system, in addition to the general clause requiring the defendant to surrender it in good condition, the defendant was required to perform all required maintenance and to refrain from dumping kitchen fats or ground garbage into the sinks and drains.

On October 1, 1961, the defendant entered into possession of the premises but decided to vacate on

or about June 7, 1962, and so notified the plaintiff. The defendant did not vacate, however, until December 21, 1962, about six months prior to the expiration date of the lease. On quitting the premises, the defendant notified the plaintiff by telegram but left no one in charge of the house. Between the time the defendant vacated and January 8, 1963, a water pipe burst owing to the fact that the defendant, in violation of his duties under the lease, failed to cover three louvres in the attic during the cold weather. As a result, the house suffered substantial water damage necessitating extensive and expensive repairs. During the defendant's occupancy of the premises, several rental checks were dishonored and the rent was paid only through October, 1962. From the facts found, the referee concluded that the defendant had breached the lease and that the difficulties presented by the septic system did not render the premises untenantable.

The defendant's principal claim is that the subordinate facts found by the referee do not support the conclusion that the premises were not untenantable as that term is used in § 47-24 of the General Statutes.[1] The purpose of § 47-24 is to mitigate the unconscionable hardship of the common law which required the tenant to continue rent payments even though the premises had become, without fault or neglect on his part, unfit for use or occupancy.

---

[1] "[General Statutes] Sec. 47-24. TENANT NOT LIABLE FOR RENT WHILE PREMISES ARE UNTENANTABLE. The tenant of any tenement which, without his fault or neglect, is so injured as to be unfit for occupancy shall not be liable to pay rent after such injury so long as such tenement is untenantable, if he continues to occupy, unless it is otherwise expressly provided by written agreement; and, in case of such injury, he may quit possession of such tenement, but, if the same becomes fit for occupancy during the continuance of his lease, he shall then pay the rent and may again occupy it."

*Hayes* v. *Capitol Buick Co.,* 119 Conn. 372, 376–77, 176 A. 885; *Sigal* v. *Wise,* 114 Conn. 297, 304–5, 158 A. 891; *Lesser* v. *Kline,* 101 Conn. 740, 746, 127 A. 279. The statute provides relief "where the building becomes untenantable by reason of some sudden and unexpected calamity; as where it is wholly or partially destroyed by fire, water, or by a mob, or other like cause." *Hatch* v. *Stamper,* 42 Conn. 28, 30. When the premises become untenantable within the meaning of § 47-24, the lessee "may be relieved from payment of rent if he continue [sic] to occupy, until the landlord shall restore the premises to tenantable condition, when he shall resume payment of rent, or, if he so elects, he may quit possession in the meantime." *Lesser* v. *Kline,* supra, 745; see *Sigal* v. *Wise,* supra, 307. Whether the premises are untenantable is a question of fact for the trier, to be decided in each case after a careful consideration of "the situation of the parties to the lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed." *Reid* v. *Mills,* 118 Conn. 119, 122, 171 A. 29; see *Hayes* v. *Capitol Buick Co.,* supra, 378–79; *Tungsten Co.* v. *Beach,* 92 Conn. 519, 524, 103 A. 632. That factual determination will not be disturbed by this court unless the conclusion is such that it could not reasonably be reached by the trier.

The referee correctly found that while the plaintiff had trouble with the septic sewage system prior to the defendant's possession of the premises and that the Greenwich health department had received a complaint about the system in 1961, at the inception of the lease the sewage system was in "good operating condition." On February 4, 1962, four months after the commencement of the lease, the septic tank

"backed up" but the referee did not find that the defendant had experienced any similar trouble with the system prior to that date or at any time thereafter. Nor did the defendant vacate the premises on or about February 4, but rather, he vacated approximately ten months later on December 21, 1962. These facts do not warrant a conclusion that the premises were made "untenantable" by virtue of the condition of the septic sewage system on February 4, 1962, or at any other time. The defendant was not justified, therefore, in suspending rent payments and in leaving the premises unattended and unprotected against possible damage to them.

In addition, it must be established that the premises were rendered untenantable without the fault or neglect of the lessee. In the absence of a statute or covenant to the contrary, the lessor does not have a duty to keep in repair any portion of the premises leased to and in the exclusive possession and control of the lessee. *Bentley* v. *Dynarski*, 150 Conn. 147, 150, 186 A.2d 791; *Welk* v. *Bidwell*, 136 Conn. 603, 609, 73 A.2d 295; *Lesser* v. *Kline*, supra, 744; *Rumberg* v. *Cutler*, 86 Conn. 8, 10, 84 A. 107. Rather, the duty to make ordinary repairs rests on the lessee and § 47-24 does not alter this duty in the absence of the lessor's promise to the contrary. *Lesser* v. *Kline*, supra, 746. In the case at bar, the lease clearly obligated the defendant to refrain from dumping fats or ground garbage into the sinks and drains and to perform all required maintenance to the septic sewage system. The defendant has failed to meet the burden of proving either that any trouble with the septic tank was without his fault or neglect or that the making of ordinary repairs could not have corrected the condition. The fact that the health department required the plaintiff to repair

the sewage system before the premises were to be rented again did not relieve the defendant of his obligations under his lease.

The defendant further claims that he was constructively evicted from the premises. Whether the defendant was relieved of his obligations under the lease due to his being constructively evicted is closely related to the above issue of whether the premises were unfit for occupancy under § 47-24 in that they both have a common element—untenantability. " 'A constructive eviction arises where a landlord, while not actually depriving the tenant of any part of the premises leased, has done or suffered some act by which the premises are rendered *untenantable.'* " (Emphasis supplied.) *Amsterdam Realty Co.* v. *Johnson,* 115 Conn. 243, 248, 161 A. 339; see *Reid* v. *Mills,* supra. Since we have already determined that the referee's conclusion that the premises were not untenantable was justified and amply supported by the findings, the defendant is likewise unable to prevail on this issue. Further, the defendant has failed to satisfy the other elements necessary in order to prevail under a theory of constructive eviction, namely, that any problem with the septic tank was caused by the landlord; *Reid* v. *Mills,* supra, *Amsterdam Realty Co.* v. *Johnson,* supra; that the defendant vacated the premises because of the alleged trouble with the septic tank; *Hayes* v. *Capitol Buick Co.,* supra, 379, *Reid* v. *Mills,* supra, 123; and that vacating a full ten months after the alleged incident in February, 1962, was within a reasonable time following the incident. *Welk* v. *Bidwell,* supra; *Cerruti* v. *Burdick,* 130 Conn. 284, 288, 33 A.2d 333.

Nor do we find merit to the defendant's claim that he did not bear the risks of the allegedly defective septic tank. In general, there is no implied warranty

of habitability given to a tenant, but rather, he takes the premises as he finds them and bears the risk of any defective conditions which are within the area under his exclusive possession and control. *Webel* v. *Yale University,* 125 Conn. 515, 518, 7 A.2d 215; *White* v. *DeVito Realty Co.,* 120 Conn. 331, 334, 180 A. 461; *Valin* v. *Jewell,* 88 Conn. 151, 156, 90 A. 36; *Gallagher* v. *Button,* 73 Conn. 172, 175–76, 46 A. 819. "This rule, however, does not apply to defects which are the result of faulty design or disrepair and which existed at the beginning of the tenancy, were not discoverable by the tenant on reasonable inspection, and were known, either actually or constructively, to the landlord." *Civale* v. *Meriden Housing Authority,* 150 Conn. 594, 597, 192 A.2d 548; *Masterson* v. *Atherton,* 149 Conn. 302, 306, 179 A.2d 592. The defendant points to this exception and claims that he falls within it. We do not agree. There is no finding that an alleged defect existed in the septic sewage system at the beginning of the tenancy. To the contrary, the referee found that at the inception of the tenancy, the septic sewage system was in "good operating condition."

Nor do we find merit to the defendant's final contention that the plaintiff may not recover on the lease since the defendant abandoned the premises retaining no interest therein. First, the defendant assumes that the house was rendered untenantable, thereby allowing him to abandon the premises, an assumption we have held to be erroneous. The referee correctly found that the defendant had breached his lease by vacating the premises six months prior to its expiration and that the house was substantially damaged by the breach. Second, even assuming arguendo that the premises had become untenantable within the meaning of § 47-24,

while the lessee may suspend rent payments and quit the premises, the lease is not automatically terminated. *Hayes* v. *Capitol Buick Co.,* 119 Conn. 372, 376, 176 A. 885; *Sigal* v. *Wise,* 114 Conn. 297, 306, 158 A. 891. In order to prevail on the theory that the plaintiff had accepted the surrender, thereby rescinding the lease and relinquishing his rights against the defendant for breaching the lease, the defendant must point to an unequivocal act on the part of the plaintiff showing his intent to accept the surrender. *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.,* 149 Conn. 149, 156, 176 A.2d 574; *Chapel-High Corporation* v. *Cavallaro,* 141 Conn. 407, 411, 106 A.2d 720; *Tseka* v. *Scher,* 135 Conn. 400, 404, 65 A.2d 169. Having failed to meet this burden, this argument likewise must fail.

One final point requires our attention. With regard to which party had the duty to keep the septic sewage system in repair, there would appear to be a discrepancy within the referee's findings. Directly following findings 30, 32 and 37–40, all of which pertain to the septic system, finding 41 states that "[p]laintiff Thomas knew it was his duty to repair." While it appears that this duty to repair was in reference to the septic system and we so hold, the referee did find elsewhere that the duty to repair the system was not on the plaintiff, but rather, on the defendant. In light of the findings and conclusions construed as a whole; see *Rosenberg* v. *Planning Board,* 155 Conn. 636, 642–43, 236 A.2d 895, *Cook* v. *Simon,* 98 Conn. 98, 101, 118 A. 634; a reasonable construction would be that finding 41 obviously had reference to the plaintiff's duty to repair the septic system after the defendant had vacated the premises on December 21, 1962, and did not place any duty whatsoever on the plaintiff to

make ordinary repairs to the septic system during the defendant's tenancy—that duty being clearly on the defendant by virtue of both the common law and lease covenants.

There is no error.

In this opinion the other judges concurred.