[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed October 2, 1996
This case arises out of an alleged assault on the plaintiff by one Oliver M. Toomey, who is not a party to this action.*
The basic allegations of the complaint begin with the claim that the plaintiff's roommate, Brady Noel, who is also not a party to this action, sexually assaulted the defendant, Kristen Bakis. Subsequently, Bakis invited Toomey, her cousin, to Quinnipiac College, where she was a student, described the assault to him, and allegedly gave him information about where Noel lived on campus. Toomey spent the night in Bakis' dormitory room, and, the next day, went to Noel's room, where he allegedly inflicted a severe beating upon Noel. When the plaintiff attempted to intercede on his roommate's behalf, Toomey allegedly inflicted upon him the injuries which are the subject matter of this litigation. The defendants, Kristin Bakis and Quinnipiac College, have now each filed motions for summary judgment, claiming that there are no disputed issues of fact as to certain of the counts in the plaintiff's complaint and claiming that as to those counts, they are entitled to judgment as a matter of law.
This court had previously granted Bakis' motion to strike counts seven, eight and nine of the plaintiff's revised complaint, alleging, respectively, negligence, recklessness and conspiracy. (See Memorandum of Decision dated September 28, 1995.) Following that decision, the plaintiff filed a second revised complaint, amplifying the factual allegations in support of his claims of negligence, recklessness and conspiracy by Bakis. She again moved to strike these three counts, alleging that even as amended, they failed to state claims upon which relief can be granted. In a memorandum of decision dated April 8, 1996, this court agreed that the plaintiff had failed to state a claim for which relief could be granted as to the conspiracy claim, but determined that the plaintiff had alleged sufficient facts to enable it to conclude, construing those factual allegations in the light most favorable to the plaintiff, that his negligence and recklessness counts stated claims upon which relief could be granted as a matter of law. These motions for summary judgment, accompanied by affidavits and memoranda of law from all parties, followed that ruling.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Book § 384; Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994); Telesco v. Telesco, 187 Conn. 715, CT Page 6316447 A.2d 752 (1982); Yanow v. Teal Industries, Inc., 178 Conn. 262,422 A.2d 311 (1979). A "material" fact is one which will make a difference in the outcome of the case. Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431,362 A.2d 857 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 273 A.2d 716 (1970);Dorazio v. M.B. Foster Electronic Co., 157 Conn. 226, 253 A.2d 22
(1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1980). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party."Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772,780-81, 595 A.2d 334 (1980).
Once the moving party has submitted evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11-12
(1983); Farrell v. Farrell, 182 Conn. 34, 38 (1980); RuscoIndustries, Inc. v. Hartford Housing Authority, 168 Conn. 1, 5
(1975). It is not enough for the opposing party merely to assert the existence of such a disputed issue. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380." Bartha v.Waterbury House Wrecking Co., supra, 190 Conn. at 12. "The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." Kasowitzv. Mutual Construction Co., 154 Conn. 607, 613 (1967), quotingBoyce v. Merchants Fire Ins. Co., 204 F. Sup. 311, 314 (D. Conn. 1962); Burns v. Hartford Hospital, 192 Conn. 451, 455 (1984).
The party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denial but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 CT Page 6317 S.Ct. 2505, 2514, 91, L.Ed.2d 202, 217 (1986), cited in Salomonv. Krusiewicz, 14 CLT 456 p. 31, (Super.Ct., New Britain, 10/6/88).
As to the defendant Bakis, the issue here is whether she is entitled to summary judgment as a matter of law on allegations that she:
 a. failed to use reasonable and ordinary care by permitting Toomey to visit her at Quinnipiac College, and then harboring him overnight in her dormitory suite, knowing that a confrontation between Toomey and Noel was foreseeable;
 b. failed to use reasonable and ordinary care by disclosing to Toomey sufficient information to identify and locate Noel; and
 c. failed to use reasonable and ordinary care by leaving Toomey unsupervised.
Second Revised Complaint, dated October 12, 1995, Seventh Count, ¶ 18.
In denying Bakis' motion to strike as to the Seventh and Eight Counts, the court relied on Sections 448 and 449 of the Restatement (Second) of Torts, observing that "no Connecticut case directly addresses the factual situation presented here." One week after that decision, however, the Connecticut Supreme Court addressed similar issues in Fraser v. United States,236 Conn. 625 (1996), and Bakis now contends that aided by that decision and the facts as established by the affidavits and other documents, she is entitled to judgment as a matter of law.
In Fraser v. United States, the Veteran's Administration ("VA") was sued in federal court for negligence following the 1985 murder of Hector Fraser by John Doe. On June 6, 1985, Doe, the VA's psychiatric outpatient since his 1974 diagnosis for schizo-affective schizophrenia (manifested by paranoid delusions and accompanying delusions of violence), complained about the medication prescribed to control his neuroleptic fits, was given a new prescription and released with instructions to return for a check up on June 13, 1985. Doe did return and, after examination, was considered stable and released. Four days later, he suffered a delusional fit and murdered Fraser, with whom he was known to CT Page 6318 have a long-standing relationship as both a former employee and a frequent house guest.
Following the murder, the decedent's estate brought suit in the United States District Court against the VA, alleging that it had failed to warn others of Doe's violent propensities and failed to take reasonably necessary actions to control Doe's conduct. The District Court granted the VA's motion for summary judgment. The U.S. Court of Appeals for the Second Circuit affirmed the District Court's ruling that the VA had no duty to warn in the "absence of any objective indicia of a patient's propensity to cause harm" and referred the second issue, whether Connecticut law imposed a duty to control Doe's conduct under the circumstances, to the Connecticut Supreme Court.
In holding that the VA "owed no duty to control Doe so as to prevent Doe's assault on Fraser," the Connecticut Supreme Court reasoned that the VA ". . . neither knew nor had reason to know that Doe would attack Fraser because Fraser was not an identifiable victim, a member of a class of identifiable victims or within the zone of risk to an identifiable victim." Fraser v.United States, supra, at 637. Although Doe's psychiatric file documented the facts that he "harbored" delusions of fighting and killing and carried a buck knife and loaded guns, he had never previously acted or even threatened to act on his delusions. Thus, the court found that Doe was properly allowed to remain on outpatient status. Fraser v. United States, supra at 628, 629.
 . . . our decisions defining negligence do not impose a duty to those who are not identifiable victims, . . . courts in other jurisdictions have overwhelmingly declined to extend any duty to control to encompass harm to third persons . . .
 Existing Connecticut precedents impose only a limited duty to take action to prevent injury to a third person. Our point of departure has been that "absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another. . ." In any determination of whether even a special relationship should be held to give rise to a duty to exercise care to avoid harm to a third person, foreseeability plays an important role . . . our threshold inquiry has always been whether the specific harm of the type alleged by the CT Page 6319 plaintiff was foreseeable to the defendant . . . Thus, initially, if it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff.
Fraser v. United States, supra at 632-33.
The holding in Fraser v. United States is premised on the observation that Doe had "no history of dangerous conduct or articulated threats of dangerous behavior," thus making Fraser unidentifiable as a victim. Fraser v. United States, supra at 635. Importantly, the Connecticut Supreme Court accepted that the VA neither knew nor had reason to know of Fraser's existence as a potential victim or of Doe's predisposition to act out his violent delusions, despite the plaintiff's expert medical evidence that the VA should have anticipated Doe's murdering Fraser (or some other person) as a reaction to his new medication. Id.
For purposes of this motion, the following facts appear to be undisputed: on Saturday evening, November 13, 1993, while an on-campus freshman at Quinnipiac College, Bakis was physically and sexually assaulted by Brady Noel, another freshman, who lived in a separate dormitory. Unknown to Bakis, Noel was the dormitory roommate of Brian Bendowski, the plaintiff. Upset by the assault on her, Bakis spoke with her roommates, Karen Dionne and Cindy Johnston, and called her best friend from home, Jessica Jaime. On Monday, November 15, she sought counseling at the college, and, that evening at about 8:00 p.m., spoke on the telephone with her cousin, Oliver Toomey, with whom she had a very close relationship.
Although she did not specifically ask him to do so, Toomey that same evening drove down from Stonehill College, where he was a student, to see Bakis. When he arrived, Toomey appeared calm and friendly, both to Bakis and to her roommate, Virginia Sargent, who had met Toomey at least once before. Bakis and Toomey then talked into the early hours, mostly about "old times," as Toomey tried to cheer her up.
The next day, Bakis attended her classes and then spent the CT Page 6320 afternoon with Toomey and her college friends watching television. At approximately 4:00 p.m. to 5:00 p.m. on November 16, 1993, Toomey told Bakis that he had to return to his college to prepare for an examination. As they parted, Toomey left Bakis and Sargent with no indication that he had any intention other than to return to his own college; he gave no indication that he was angered by the assault, that he knew who Noel was or where he lived or that he intended to discover who Noel was or confront him about the assault.
The only document that suggests a contrary intention by Toomey, or any possible role for Bakis in the forming of such an intention, is one prepared by plaintiff's counsel in connection with the resolution of criminal charges against Oliver Toomey and the settlement of the plaintiff's civil claims against him. That document recites a number of areas of agreement in connection with the nature of Toomey's plea (guilty, rather than nolo contendere), his sentence, restitution, etc., and goes on to state that Toomey "specifically covenants and agrees further that . . . Kristin Bakis of Lynn, Massachusetts negligently incited him to violence on or about November 16, 1993 by encouraging him to come to Quinnipiac College, by providing him with overnight housing in her dormitory room, by not keeping his activities under control as required by the Student Hand Book, and by negligently inciting him to violence against Brady Noel and his roommates, including Brian Bendowski . . ."
There are several problems with the use of this document in considering whether a material fact . . . in this case, Bakis' role, if any, in "inciting" Toomey to action against Noel . . . is in dispute. For one thing, the document was not presented to the court with the plaintiff's brief or at the time of the original argument to the court. It was only because of the fortuity that argument, although begun, was unable to be completed on the first date scheduled, and because both defense counsel and the court expressed concern about the absence of any documentation, other than the complaint itself, tending to put this issue in dispute, that plaintiff, aided by a brief continuance, located it and sought to have it considered by the court on the second argument date.
Second, although a statement under oath, the document is written in the third person and obviously was drafted by plaintiff's counsel for Toomey's signature. Most significantly, however, the language relied on in the document is conclusory CT Page 6321 and/or a statement of the effect of Bakis's conduct on Toomey, rather than a description of what Bakis herself did or said. For example, the statement initially describes Bakis having "negligently incited him," a legal conclusion that has no bearing on the determinations that the court is called upon to make in resolving this motion.
More importantly, the factual allegations in the document that allegedly support the conclusion that Bakis negligently incited Toomey do not do so at all. Encouraging Toomey to come to Quinnipiac and giving him shelter, without much more, do not support a conclusion that facts concerning Bakis' alleged negligence are in dispute. As previously discussed in this court's most recent ruling on Bakis' motion to strike, there is no evidence that Toomey was a person in need of some sort of supervision, and therefore no duty on Bakis' part to keep "his activities under control." The final portion of this paragraph asks the court to conclude that Bakis ". . . negligently incited him to violence . . . by negligently inciting him to violence against Brady Noel and his roommates . . ." This argument is not only conclusory but circular as well, and it provides the court with no allegations of fact to support the conclusion that Bakis incited him to violence.
The plaintiff asks that this paragraph be construed as evidence that Bakis affirmatively undertook to arouse Toomey to action, but in fact the language (which, again, is actually that of plaintiff's counsel, adopted by Toomey) is at best a statement of the effect. not the cause. The court views that document not as a statement that Bakis negligently did or said anything in particular to incite or inflame Toomey, but rather, at best, that whatever was . . . or was not . . . said and done, Toomey's response was one of feeling incited. As such, it does not dispute the otherwise uncontradicted allegations that Bakis herself did and said nothing to encourage Toomey to take action against Noel, or indeed, that she in fact acted in such a way as to avoid giving Toomey information that he might use to act out against Noel. Plaintiff has presented nothing to dispute Bakis' contention that she never identified Brady Noel by name as her assaulter, never disclosed his whereabouts, and never specifically encouraged, incited or inspired Toomey to confront Noel.
To Bakis' knowledge, Toomey had never been involved in a fight with any one before November 16, 1993, had never been CT Page 6322 arrested for any reason, was not prone to loss of temper, and was not armed with a metal pipe during his visit to her. She had no concern that Toomey would physically assault Noel. During his visit, Toomey behaved properly and showed no behavior which would have suggested he might become physically violent.
This court previously expressed its concern that the chain of allegations that might lead to a conclusion of foreseeability of Toomey's actions by Bakis was extremely attenuated,
 . . . requiring many assumptions: . . . that Noel had a roommate; that Bakis knew Noel had a roommate; that Bakis knew the roommate was likely to be present when Toomey arrived; that Toomey would provoke a physical altercation with Noel in Noel's room; that Toomey would be armed with a metal pipe; that the plaintiff would be likely to intervene in such a confrontation; and that Toomey would turn his wrath on the plaintiff, to name just a few.
Memorandum of Decision, April 8, 1996 at 5.
The materials submitted in connection with summary judgment resolve all of these factual assumptions in Bakis' favor. Toomey gave Bakis no indication of his intentions to harm Noel. Noel, and certainly Bendowski, were unidentifiable victims of Toomey as far as Bakis could reasonably tell. In fact, Bakis herself did not even know Bendowski. Because Bakis did not disclose Noel's name or location to Toomey, she had no reason to anticipate that Toomey would assault Noel (much less Bendowski). Noel, and so Bendowski, are thus unidentifiable victims as regards Bakis, because, on the facts of this case provided to the court in connection with the instant motions (as distinguished from the allegations of the plaintiff's complaint), she could not foresee that they would become Toomey's victims. Moreover, Toomey had no prior history of arrests, fighting or losses of temper, and gave Bakis no indication that he knew who Noel was or where to find him. In short, Bakis neither knew nor had reason to know of any "objective indicia of [Toomey's] propensity to cause [Noel] harm." Fraser v. United States, supra at 629.
Thus, although this court had previously concluded that the seventh and eighth counts of the plaintiff's complaint, as alleged, stated claims on which relief could be granted as a matter of law, the affidavits and other documents submitted to CT Page 6323 the court in connection with the present motion demonstrate that no material facts are in dispute with respect to those allegations, and the undisputed facts demonstrate that the defendant Bakis is entitled to a judgment on those counts as a matter of law.
The defendant Quinnipiac College also seeks summary judgment as to the recklessness, breach of implied warranty, breach of contract and negligent and reckless misrepresentation counts of his complaint. It does not contend that it is entitled to summary judgment on the plaintiff's negligence count. In deciding Quinnipiac's motion, the following additional undisputed facts are relevant:
On or about November 16, 1993, the plaintiff was a duly enrolled and matriculated full-time student at Quinnipiac and resided at a college dormitory owned and operated by Quinnipiac. In exchange for tuition, room and board, Quinnipiac offered educational and other services, including security. In the Student Handbook, Quinnipiac represented: (1) that it provides and maintains security 24 hours a day, seven days a week, (2) that it conducts regular checks of all residential and academic buildings for the safety and protection of the College community, (3) that it conducts regular foot patrol of all College buildings and residential buildings and (4) that it provides perimeter security at all entrances of the College, seven nights a week during the academic year. Additionally, it was Quinnipiac's policy not to lock the plaintiff's dormitory, Dana English Hall, until 7 p.m. every evening.
After Toomey's arrival at Quinnipiac at 11:00-11:30 p.m. on November 15, he was stopped by the parking attendant to the visitors' lot. He gave his name and the name of defendant Bakis. He was allowed to park and proceed to Bakis' dormitory without having to sign in or identify himself again. After leaving Bakis the following day, he went to Dana English hall. He was able to enter the dormitory without resistance. Toomey then proceeded to Noel's room. At no time was he asked to identify himself or explain his presence in the dormitory. Having entered Noel's room, Toomey identified Noel and attacked him, and later, the plaintiff, with a metal pipe.
After the assault, Toomey fled, pursued by several students. He made it back to his car and drove off, but his license plate number was taken by the students pursuing Toomey and given to CT Page 6324 Campus Security, which determined that the car was registered to Toomey's father in Lynn, Massachusetts. As part of the investigation, Campus Security discovered Bakis by contacting all Lynn, Massachusetts students at Quinnipiac.
As to the recklessness count, this court has already observed, in denying the defendant's motion to strike, that the mere fact "that the recklessness count relies upon the same factual allegations as the negligence claim does not, in and of itself, provide [the defendant] with the basis for a motion to strike," (Memorandum of Decision, April 8, 1996). Based on the undisputed facts as set forth in connection with this motion for summary judgment, however, it is apparent that as a matter of law, the plaintiff can not prove recklessness on the part of Quinnipiac.
To constitute recklessness, the defendant must have chosen a course of action knowing that it would involve serious danger to others or with knowledge of facts which would disclose this danger to any reasonable person. Mooney v. Wabrek, 129 Conn. 302,308 (1942). Recklessness implies "highly unreasonable conduct, involving an extreme departure from ordinary care, in the situation where a high degree of danger is apparent." Dubay v.Irish, 207 Conn. 518, 533 (1988). No facts tending to support such a conclusion having been advanced by the plaintiff, this court concludes that Quinnipiac is entitled to judgment as a matter of law on this count. The evidence submitted certainly is sufficient to make out a case of negligence, and this is conceded by Quinnipiac for purposes of summary judgment. While the facts upon which the negligence count rises or falls are in dispute, however, the facts which the plaintiff claims supports its recklessness count, even if undisputed, would not support a finding of recklessness as a matter of law. Quinnipiac's motion for summary judgment as to this count is therefore granted.
In the third count of his complaint, the plaintiff has alleged that Quinnipiac College, as a landlord, breached its warranty of habitability by maintaining a defective condition, namely inadequate security, and that this defect caused the plaintiff's injury. Although the general rule is that there is no implied warranty of habitability given to a tenant, that rule "does not apply to defects which are the result of faulty design or disrepair and which existed at the beginning of the tenancy, were not discoverable by the tenant on reasonable inspection, and were known, either actually or constructively, to the landlord." CT Page 6325Thomas v. Roper, 162 Conn. 343, 349-50 (1972). Although neither party has provided this court with authority for the proposition that the rule does or does not apply in the context of an allegation of inadequate security, the undisputed facts suggest that Quinnipiac's security program existed at the beginning of plaintiff's residency at Dana English Hall. There is a factual dispute over whether either party had actual or constructive knowledge that Quinnipiac's security plan was defective, as well as whether it in fact was defective. Because genuine issues of material fact exist, Quinnipiac College is not entitled to judgment as a matter of law, and its motion for summary judgment must be denied as to this count.
As to the breach of contract count, there is, at a minimum, a dispute over whether a contractual relationship existed between the plaintiff and Quinnipiac. However, the plaintiff paid monies to the school in exchange for educational services, dormitory facilities, food services and, arguably, campus security. "The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence." Fortier v. NewingtonGroup, Inc., 30 Conn. App. 505, 509 (1993); Homecare Inc., supra,
at 775. Hence, the issues of the terms of the contract between the college and the plaintiff are questions of fact for the trier, and summary judgment must therefore be denied as to the breach of contract count.
As to the negligent misrepresentation count, Connecticut has long "recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know or has the duty of knowing the truth." Williams Ford, Inc.v. Hartford Courant Co., 232 Conn. 559, 575 (1995). Quinnipiac College made numerous representations about its security in its Student Handbook, including the statements that it "strives to provide a safe and secure environment;" provides security 24 hours a day, seven days a week; conducts regular foot patrols of all of the residential buildings; and conducts regular checks of all residential buildings. There is, however, evidence before that court that, not stated in the Handbook, student Residential Assistants were an integral part of the security machinery, and there is, of course, ample evidence that Toomey, an outsider, was able to get into the plaintiff's dormitory room unimpeded by any security measures.
The college argues that the plaintiff did not in fact rely on CT Page 6326 what he now terms "misrepresentations." The available facts suggest that the plaintiff does not remember exactly what he read in the Student Handbook as to security or talking to any administrators about it, but he did testify at his deposition that "security is always a concern anywhere I go." The extent of the plaintiff's reliance is an issue that remains in dispute in this case. The question thus becomes a genuine issue of material fact, and summary judgment as to this count is inappropriate.
As to the defendant's argument for summary judgment on the reckless misrepresentation count, the same analysis which led to the granting of summary judgment as to count two applies to this count as well. The plaintiff has not placed in dispute any factual allegations which would support the conclusion that the representations of the defendant with regard to campus security, even if misrepresentations, were made recklessly.
For all of the above reasons, the defendant Quinnipiac College's Motion for Summary Judgment is granted as to counts two and six, but denied as to counts three, four and five.
SILBERT, J.