[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is the owner of the Hamden Mart, a large shopping center located in Hamden. The defendants Carl M. DeProfio and Gary Ingeme entered into a five-year lease with the plaintiff beginning March 1, 1986 for one of the stores at the shopping center. One of the defendants, who operated a retail video store in Shelton, decided to open a second store in Hamden. The second defendant agreed to become his partner and together they opened the video store known as Videomax II Home Entertainment.
The Shelton store enjoyed the protection of a "non-compete" provision in the lease. The Shelton landlord agreed that he would not rent any of the other stores in that shopping center to a business in competition with the video store. This was not the case in Hamden, however. In discussing the terms of the lease in Hamden with the plaintiff's managing agent, Mr. DeProfio asked for a non-compete provision after consulting with his attorney. He was advised that MC Corp did not generally agree to put non-compete provisions in their leases and would not agree to such a provision for the defendants. The defendants nevertheless decided to go ahead and execute the lease without the protection of a non-compete provision.
The principal part of the business of Videomax II was the rental of pre-recorded videotapes. The defendants also rented and sold related video equipment, including televisions and VCRs. The business did well after opening in 1986 and sales increased in 1987. Toward the end of 1989, however, business began to decline. Shortly after January 1, 1990, the defendants decided to close their business. On January 24, 1990, the defendants asked the plaintiff for a release from their lease, which did not expire until the end of March, 1991. The plaintiff refused. The defendants nevertheless vacated the leased premises as of May 1, CT Page 10933 1990. This is the plaintiff landlord's action for unpaid rent and damages resulting from the defendants' breach of the lease.
There is no dispute that the defendants failed to pay the rent due under the lease beginning in March 1990. The defendants separately filed several special defenses. The principal defenses are that the plaintiff is not entitled to judgment because in negotiating and executing a lease for another store at the Mart to a Blockbuster Video store, the landlord breached the implied covenant of good faith and fair dealing and caused a constructive eviction of the defendants. The defendants' somewhat elusive claim is that despite the absence of a non-compete provision in the lease, they reasonably expected that the plaintiff would not enter into a lease with a tenant in competition with the defendants and further that the plaintiff should have known that renting space for a Blockbuster Video franchise would impede the defendants' ability to perform under the lease.
A commercial lease imposes upon both landlord and tenant a duty of good faith and fair dealing. Warner v. Konover, 210 Conn. 150,154 (1989). This duty arises under 205 of the Restatement (Second) of Contracts, which provides, "Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." In an effort to provide guidance as to the scope of this duty of good faith and fair dealing, one of the comments to 205 refers to the definition of good faith under the Uniform Commercial Code. "`Good faith' means honesty in fact in the conduct or transaction concerned." Connecticut General Statutes 42a-1-201 (19). Comment (a) to 205 explains further:
 The phrase "good faith" is used in a variety of contexts, and its meaning varies somewhat with the context. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving "bad faith" because they violate community standards of decency, fairness or reasonableness.
2 Restatement (Second), Contracts (1981) 205.
The defendants contend that the plaintiff breached the covenant of good faith and fair dealing by entering into a lease with an allegedly formidable competitor of the defendants, Blockbuster Video, which could forseeably put the defendants out of business. This claim cannot be sustained as a matter of law or fact. The defendants have cited no cases in which the covenant of CT Page 10934 good faith and fair dealing was construed to prohibit a landlord, in the absence of a non-compete provision, from entering into a lease with a tenant who would compete with another tenant. Apparently, no court has gone so far in its interpretation of the covenant. The defendants do rely on Warner v. Konover, supra, but that case is distinguishable from the one before this court.
The lease in Warner obligated the tenant to obtain the landlord's consent before assigning the lease or subletting any part of the leased premises. The lease did not contain any clause specifying that the landlord's consent would not be unreasonably withheld. The Connecticut Supreme Court held that the landlord must exercise the discretion to withhold consent to assignment in a manner consistent with good faith and fair dealing. The court reversed the trial court's decision granting a motion to strike and remanded, finding that the plaintiff's allegation that the defendants refused to consent to assignment until the lease was re-negotiated was sufficient to raise a claim of lack of good faith and fair dealing.
The defendants fail to explain how the Supreme Court's decision in Warner has any direct bearing on this case and the court finds that it has none. The Court in Warner imposed the good faith and fair dealing requirement in connection with a discretionary right which the landlord had under the specific terms of the lease — the right to give or withhold consent to the tenant's proposed assignment of the lease. In this case, the lease between the parties is entirely silent as to the landlord's ability to rent other space in the shopping center to tenants of the landlord's choosing. There is no contract provision to which the good faith and fair dealing obligation can be applied.
An analysis of the defendants' claim in light of the considerations set forth in the comments to 205 of the Restatement also shows the claim to be lacking. The landlord's conduct certainly was not dishonest. The plaintiff told the defendants before the lease was signed that it did not generally allow non-compete provisions in its leases. The defendants understood that the plaintiff was free to rent to competitors of the defendants and this is exactly what the plaintiff did. The defendants claim that they had a "reasonable expectation" that the plaintiff would not lease space in the shopping center to an allegedly significant competitor such as Blockbuster Video. Comment (a) to 205 does speak of "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." (Emphasis added). But these parties did not "agree" to non-competition and the defendants' expectation was not "justified". They had asked for a non-compete provision and had been denied. Other stores within the Hamden Mart were engaged in direct competition with one another, making clear that the CT Page 10935 plaintiff as landlord intended to rent to tenants who competed with one another. The defendants have not made any claim that plaintiff's conduct violated community standards of decency, fairness or reasonableness, a third consideration set forth in comment (a) to 205 of the Restatement. The defendants' claim of plaintiff's breach of the covenant of good faith and fair dealing is insufficient as a matter of law.
Even if defendants' claim were found legally sufficient, the defense could not be sustained on the facts. The defendants' business decline was not caused by competition from Blockbuster Video. The defendants decided to close their business in early January 1990. However, Blockbuster Video did not open for business at the Hamden Mart until mid-August of that same year, some 3-1/2 months after the defendants had already vacated. The defendants and Blockbuster Video never actually engaged in competition because Videomax II closed months before Blockbuster opened. (Moreover, one of the defendants admitted in his testimony that the anticipation of the opening of Blockbuster Video was only one of several reasons for the defendants' decision to vacate.)
The fact that Videomax II closed and moved out prior to the opening of Blockbuster Video for several different reasons is also dispositive of the defendants' defense of constructive eviction. A constructive eviction is not established unless the tenant vacates the premises as a result of the landlord's actions complained of. Hayes v. Capitol Buick Co., 119 Conn. 372, 379
(1935). Even if the defendants could show that a claim of constructive eviction could be based on facts such as these, rather than the more typical case of physical uninhabitability. the defendants failed to show the necessary causation between competition from Blockbuster Video and the defendants' vacating of the premises. That competition never actually occurred and the anticipation of such competition was only one of several reasons why the defendants closed their business.
The defendants alleged, but did not brief, several additional special defenses. Mr. DeProfio alleged that Mr. Ingeme was solely responsible for the rental payments because he ran the business on a day-to-day basis and was therefore in exclusive control of the premises. Both defendants signed the lease, however, and the plaintiff never released either defendant from their joint and several obligations under the lease. This defense is without merit.
Both defendants alleged special defenses that the plaintiff did not incur any loss as a result of the breach of lease because another tenant absorbed the space previously occupied by the defendants. This unbriefed defense was not supported by any CT Page 10936 evidence at trial. The plaintiff's representative testified that the store previously leased to the defendants remained vacant as of the date of trial. These defenses are without merit.
The final defense of both defendants is that the plaintiff failed to mitigate its damages and refused to re-rent the premises to an interested tenant. The defendants failed to brief this defense too. At trial, the defendants called as a witness the owner of a video store in Cheshire who testified that he called the plaintiff shortly before the defendants vacated to express an interest in renting the defendants' store. He also testified, however, that he was not interested in renting the store after he learned of the Blockbuster Video lease and he did not pursue the matter.
The plaintiff cannot be found to have failed to mitigate damages by failing to re-let the premises to an uninterested tenant. Furthermore, the plaintiff presented testimony about its efforts to re-let the premises and all of the plaintiff's actions in that regard are found reasonable and sufficient. There is no merit to these defenses.
The court finds that the defendants breached their lease with the plaintiff and judgment should enter for the plaintiff. The plaintiff submitted a written claim for damages for rent, interest, late charges and attorneys' fees totalling $74,243.34. Some adjustments to the plaintiff's claim are necessary, however.
A landlord who has accepted the surrender by the tenant of the lease may sue for damages resulting from the tenant's breach of the lease. Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384 (1989). The plaintiff is entitled to judgment for March 1990 rent of $3,685.87 and April 1990 rent of $4,354.92 because the defendants remained in possession for both those months. The plaintiff is further entitled to consequential damages equal to lost rent for the balance of the lease term. The total of rent and damages, after credit for defendants' security deposit, is $49,047.58. Plaintiff is further entitled to late charges for March and April 1990 totalling $50. and interest for rent for those two months at the rate of 1-1/2% per month as provided in the lease, an additional $2,346.88.
However, the plaintiff is not entitled to late charges and interest on "Rent" as provided in the lease for months other than March and April, 1990 because plaintiff is not being awarded "rent" for those months. When the landlord accepted surrender of the tenancy, the tenancy ended and the tenant was not obligated to pay rent. Unpaid rent, which is not recoverable as "rent" because the lease has ended, becomes the measure of damages for breach of the lease. Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., CT Page 10937 supra at 388-389. The plaintiff is not being awarded rent from May, 1990 through March, 1991 and neither late charges nor interest on "Rent" as provided in the lease can be recovered.
The plaintiff also seeks an award of $12,754.20 in attorneys' fees pursuant to paragraph 22 of the lease. Plaintiff's counsel submitted a detailed time sheet showing all time spent on this matter. Defendants' counsel have made no challenge to the amount claimed and it appears to the court to be reasonable.
Judgment is entered for $51,444.46 damages plus attorneys' fees of $12,754.20 and costs.
VERTEFEUILLE, J.